SABINE & EAST TEXAS RAILWAY COMPANY v. R. W. EWING. ·

No. 48.

**1. Preparation of Briefs.**—We think it a proper practice, in the preparation of briefs, for the appellant or plaintiff  in  error to group such assignments as present the same question, as in the case of a defective charge, with the special instructions requested to correct the same; and that such practice is to be commended rather than objected to as in violation of the rules.

**2. Preparation of Charges Asked.**—The special charges asked by defendant were two different phases of the case without being separated, except that they are numbered.   *Held*, the trial court is not  required to select one of several charges asked as an entirety and give it, when others are not applicable or called for by the facts of the case, or when the jury has already been fully instructed on the question.

**3. Charges on Known Defects Properly Refused.**—The plaintiff, a fireman, was injured by the parting of the engine from the tender.   The charge given by the court below correctly stated what plaintiff  was required to show,

in order to entitle him to a recovery. The jury was also told, that if it should appear from the evidence that the injuries were received in consequence of the fault or negligence of the plaintiff, then he could not recover. A requested charge was, in substance, that if the plaintiff knew, or by the exercise of ordinary care might have known, of any old crack, if any, in the casting which coupled the tender to the engine, and he continued in his employment, and in the use of said tender and engine, that he could not recover. While in the abstract correct, this charge might have misled the jury as to the care required of the plaintiff, when taken in connection with the duty of the defendant to furnish reasonably safe machinery; because plaintiff was not charged with the duty of inspecting the coupling for latent defects.

4. **Safe Machinery—Charges.**—See statement of case for a charge given, held to be erroneous, and a charge refused, held to be correct.

5. **Fellow Servant.** — The negl.gence which may have been shown on the part of the engineer, was the failure to inspect the engine and see that the coupling was in safe condition; and as this was the duty of the defendant, the failure of the engineer to properly inspect would be the negligence of the defendant, and not of a fellow servant; and a charge upon nonliability of the company because of negligence of a fellow servant was not called for.

6. **Excessive Verdict.**—See facts upon which a verdict for $30,000 for personal injuries was held to be excessive, because not to be sustained by any rule of computation.

Error from Jefferson.   Tried below before Hon. W. H. Ford.

The third charge given and third charge requested were as follows:

"3. It is the duty of every railway company to furnish and keep in good repair and in safe repair and condition engines and machinery, such as couplings, and every part of the apparatus and fixtures attached to their cars and engines necessary for the transaction of their business and the operation of their engines and trains; and the degree of diligence which should be used in doing this should be proportioned to the degree of hazard or danger which may reasonably be anticipated as consequent upon its neglect, considering the work to be done; and if the defendant used such care and diligence in furnishing and keeping in good repair and in safe condition the alleged defective machinery complained of by plaintiff as causing his injuries, it would not have been guilty of such negligence as would render it liable for damages for the injuries to plaintiff as its employe."

"3. The defendant railway company was not required by law to insure the plaintiff against hurts or injuries from defective machinery, but only to use reasonable care in selecting and furnishing to him and other employes implements and appliances for the performance of their duties, and to see that they were safe and appropriate in so far as it could do by the exercise of such care as ordinarily prudent persons would employ in such matters, considered with reference to the risks to be incurred in such matters, and reasonably proportioned to such risks. And defendant would in no case be, by the law, held liable for injuries resulting from such de-

fects in such machinery or appliances as were concealed, or of which the company or its agents charged with the duty of selecting and furnishing said machinery did not know of, and could not have known of in the exercise of the care above explained; and if you believe from the evidence, that the defendant company or such agent had exercised such care, and did not know of such defects, if any, as alleged in plaintiff's petition, then you will find for defendant; for in such case defendant company would not be responsible for plaintiff's injuries, if any were received as alleged; the said Ewing having, in entering the service of defendant, assumed all risks to himself from his employment, except those which flow from the negligence of his employer in the failure to perform its duty as herein before defined."

*O' Brien & O' Brien*, for plaintiff in error.— 1. The court erred in excluding from the jury proper instructions as to the character and degree of care and prudence required by law of railway companies or defendant, in furnishing and keeping in repair machinery and appliances. Railway v. Delahunty, 53 Texas, 211; Railway v. Silliphant, 70 Texas, 628–631; Railway v. Bell, 75 Texas, 51; Railway v. Kernan, 78 Texas, 297; Railway v. O'Fiel, 78 Texas, 488, 489; Railway v. Underwood, 64 Texas, 463; Railway v. McCarthy, 64 Texas, 635.

2. The court erred in refusing instruction that railway companies were not responsible for latent or concealed defects in machinery and appliances. Railway v. Myers, 55 Texas, 116; Railway v. Fowler, 56 Texas, 458–461.

3. The court erred in refusing the instruction that the plaintiff was required himself to use reasonable and ordinary care and prudence for his own self-protection in his employment as fireman. Railway v. Fowler, 56 Texas, 460; Brown v. Sullivan, 71 Texas, 470.

4. The court erred in refusing any instruction "that plaintiff in his engagement as fireman assumed all the ordinary risks of or incident to his employment." Railway v. Fowler, 56 Texas, 460; Dallas v. Railway, 61 Texas, 198–200; Railway.v. Watts, 63 Texas, 549, 551; Railway v. Hester, 64 Texas, 403–405; Railway v. Dillard, 70 Texas, 62.

5. The verdict was excessive. Railway v. Randall, 50 Texas, 260.

*Douglas & Lanier* and *Greer & Greer*, for appellee.— 1. The court correctly defined negligence and instructed the jury. Brownson v. Scanlan, 59 Texas, 228; Wells v. Barnett, 7 Texas, 584; Railway v. Porfert, 72 Texas, 353; Railway v. Silliphant, 70 Texas, 630; Pierce on Rys., 371; Whart. Neg., 211.

2. It being the duty of the defendant to use ordinary care to furnish safe and suitable machinery to its operatives performing services for it, the plaintiff had the legal right to presume it had performed said duty.

And the court having charged that the plaintiff must show that the injuries occurred " without fault or negligence" on his part, after properly defining negligence, was not required to go further in that direction. Railway v. O'Hare, 64 Texas, 600; Brunswig v. White, 70 Texas, 504; Railway v. Ogden, 85 Pa. St., 63; Railway v. Scott, 71 Texas, 703.

3. In actions for personal injury, and in cases generally where there is no fixed rule of. compensation, the theory of the law is that the decision of the jury is conclusive, unless they have been misled, or their verdict has been influenced by corruption, passion, or prejudice; and there being no claim of prejudice, passion, or corruption in this case, and the lower court having approved the verdict, there is nothing to authorize a reversal on the ground of the verdict being excessive. Railway v. Robertson, 16 S. W. Rep., 1093; Railway v. Porfert, 72 Texas, 351; Railway v. Lane, 79 Texas, 643; Railway v. Brazzil, 78 Texas, 317; Railway v. Holland, 18 Ill., 418.

GARRETT, CHIEF JUSTICE.—Action to recover damages for personal injuries, brought in the District Court of Jefferson County, October 28, 1890, by the defendant in error against the plaintiff in error, received while in the employment of the defendant as fireman on an engine, and which were alleged to have been caused by the negligence of the plaintiff in error in its failure to keep in repair the attachments and fastenings which held the engine and tender together, by reason whereof, while plaintiff was engaged in the discharge of his duty on said engine and tender, they suddenly became detached from each other, and plaintiff was thrown down between them and seriously injured.

Defendant pleaded general denial, not guilty, and a special plea of contributory negligence on the part of the plaintiff.

Trial was had by jury, November 27, 1890, and verdict and judgment were rendered in favor of the plaintiff for $30,000. The errors assigned relate to the giving and refusing of instructions to the jury, and that the verdict of the jury is unsupported by the evidence and is excessive in amount.

The second and ninth assignments of error are grouped by the plaintiff in error in its brief, and present the second section of the charge of the court, which is complained of as erroneous and defective, and a special charge requested by the defendant in order to correct the same. This is objected to by the defendant in error as in violation of the rules. We think it a proper practice, in the preparation of briefs, for the appellant or plaintiff in error to group such assignments, and that it is to be commended rather than objected to, where they present the same question, as in the case of a defective charge with the special instruction requested to correct the same. But the court is not required to select one of the several charges asked as an entirety and give it, when the others are not ap-

plicable or called for by the facts of the case, or because the court has already fully instructed the jury on the question. Brownson v. Scanlan, 59 Texas, 222. The special instructions requested by the defendant were several paragraphs, apparently written one after the other, and relating to different phases of the case, without being separated, except that they are numbered; but in view of the disposition we shall make of the case, we deem it proper to notice some of the special instructions requested by the defendant.

The section of the charge complained of is as follows: "The defendant pleads the general denial, which has the legal effect to throw upon plaintiff the burden of showing by the evidence to your satisfaction, that he has been damaged substantially as alleged, and that such damage was caused, as alleged by him, by a defect in the appliances used as a coupling, or to which the coupling of the engine was attached, and that such defect was known, or by the exercise of proper care on the part of the defendant or those employes of defendant whose duty it was to inspect and ascertain such defect, might have been known; and the measure or amount of damages that the plaintiff had sustained, if any, so as that you may with reasonable certainty assess the same by your verdict, before the plaintiff would be entitled to recover."

And the special instruction requested was: "If you believe from the evidence in this case that plaintiff, Ewing, knew, or by the exercise of ordinary care and prudence might have known, of any old crack, if any, in the casting which coupled the tender, or tank, to the engine, and believe from the evidence that he continued afterward to pursue, and was at the time of such injuries pursuing, his employment in the use of said tender and engine, then, although you may believe such old crack existed therein, and that it was the cause of his injury, he can not in such case recover of defendant; and if you so believe, you will find for defendant."

There was no error in the charge given, for it correctly stated what the plaintiff was required to show. If, in connection with the evidence as developed on the trial, it should appear that the injuries were received by the fault or negligence of the plaintiff, then he would not be entitled to recover, and this was presented in a subsequent portion of the charge. The requested instruction, while in the abstract correct, would probably have misled the jury as to the care required of the plaintiff, when taken in connection with that required of the defendant to furnish machinery and appliances that were reasonably safe, because the plaintiff would not be charged with the duty of inspecting the coupling for latent defects. Railway v. Crenshaw, 71 Texas, 346.

Without setting out the third paragraph of the charge of the court, which is complained of as erroneous, and the special instructions requested in connection therewith, we are of the opinion that the charge given was

perhaps misleading to the jury with respect to the duty of the defendant to furnish reasonably safe machinery and appliances; and that the third special instruction requested by the defendant should have been given, as it very correctly states the duty with which the defendant and plaintiff were respectively charged. Railway v. Crenshaw, 71 Texas, 346.

We do not think that the evidence called for the fourth special instruction, to the effect that if the company was not chargeable with negligence under the evidence, but that the engineer was negligent, and his negligence caused the injury, then the engineer, being the fellow servant of the plaintiff, the jury should find for the defendant; because whatever negligence there may have been shown on the part of the engineer was the failure to inspect the engine and see that the coupling was in a safe condition; and as this was the duty of the defendant, the failure of the engineer to properly inspect would be the negligence of the defendant and not of the engineer, a fellow servant.

The judgment in this case is for the sum of $30,000, and it is complained of as being excessive. Plaintiff's injuries were shown to have been very severe. Dr. Calhoun, his physician, testified: "He was pretty badly wounded. He had a wound on the side of his neck, one behind his ear, one on each ear, and another wound on his shoulder, and his jaw was broken. His eyes were crossed pretty badly. His wound on his shoulder is permanent, and the one behind the ear may become permanent; the bone was exposed a good deal. That bone, possibly, in the course of time, may become dead. A portion of the shoulder-blade was exposed, and a portion of that bone is dead. It will finally cause the wound to run. He will never have good use of his arm, and probably he will be troubled a great deal with his shoulder unless he has an operation performed on it. It can be operated on and probably healed permanently. I think he has lost the use of his arm for life. The bone was injured where the collar bone and shoulder come together, and that weakens the muscles of the arm. His jaw was fractured in the lower part, and two teeth were pressed upwards and one was finally pulled out. By an operation his shoulder may be permanently healed and prevented from running. He can never be given the arm back again. It may be healed up if the bone is not too much diseased. It may be more diseased than I think. He may possibly use it for writing." Witness testified as to the cost of an operation on the shoulder, that it would perhaps be $200, and stated that he was fully assured that the bone would not heal without an operation.

Plaintiff was 24 years old and stout and healthy at the time he was injured, and a strong man. His wages were from $2.10 to $2.25 a day. With respect to his injuries, he said: "I was knocked insensible and did not know anything for about four and a half days, and when I came to my right mind I had a hole cut in the side of my neck and back of my

shoulders, and the top of my ear was gone, and there was a hole knocked in the side of my head just behind my ear; one jaw was broken. I was knocked cross-eyed and am deaf in one ear. I am now unable to use my right arm. The wound in my shoulder is not well yet; it is still running. The doctor got bones out of me. I had a box full taken out here in Beaumont, and when I went to the hospital they took out a double handfull. My jaw was broken. My shoulder-blade came through the skin at first.'' He was confined to his bed about eight weeks before he could sit up any length of time. His wounds still hurt him, and he suffered considerably in mind and body. It was four months or more before he was able to walk around alone. He was in such condition that he could do no work.

We are of the opinion that the judgment is excessive in amount. While the injuries were very severe and the damage great, still the amount is very large, and can not be sustained by any rule of computation.

It is not necessary to notice any of the remaining assignments of error. Because the judgment of the court below is excessive, it will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered December 8, 1892.