# DECEMBER, 1926

## CHRONISTER LUMBER CO. V. MRS. BOB WILLIAMS.

No. 4359. Decided December 1, 1926.
(288 S. W., 402).

**Death—Gross Negligence—Exemplary Damages.**

An employe of a lumber manufacturing corporation was killed in its service by gross negligence of its "woods foreman" in the makeup and operation of a logging train on which he was riding, the employer's duties in respect thereto having been committed to such foreman by the company's manager. The widow, having recovered for actual damages by his death, through award by the Industrial Accident Board, sued the company for exemplary damages (Constitution, Art. 16, Sec. 26; Rev. Stats., Arts. 5246, Secs. 4, 35, and 44). *Held:*

(1) The gross negligence of the "woods foreman" is to be imputed to the company, making it guilty of gross negligence and liable for the exemplary damages to plaintiff. (Pp. 213, 214).

(2) The manager of the company occupied such relation to it as to make it liable for exemplary damages for his gross negligence and for that as well of the foreman to whom the manager had committed the discharge of all the company's duties for the safety of its employes in the makeup and operation of its logging train. (Pp. 210-214).

(3) The rulings in Houston & T. C. Ry. Co. v. Cowser, 57 Texas, 295, were under a different statute (Rev. Stats., 1879, Arts. 2899-2903) applicable to railroad corporations, and unauthoritative herein. But the distinction between liability of a corporation for gross negligence of those representing the company in its corporate duties and that of its mere servants or employes, though of doubtful validity originally, is now too well established to be questioned. (Pp. 210, 211).

(4) The liability for exemplary damages for acts of an agent under Art. 16, Sec. 26, of the Constitution is not limited to negligence of officers of the corporation itself, nor extended to defaults of all employes. It has not been defined between these extremes by any general rule and must be settled by determination on the facts of particular cases as they arise. (Pp. 210-213).

Questions certified from the Court of Civil Appeals for the Ninth District, in an appeal from Nacogdoches County.

The Supreme Court referred the questions to the Commission of Appeals, Section A, for their opinion thereon, and here adopt and certify same as its answer. A motion for rehearing, also referred to the Commission, was, on its recommendation, overruled.

*Morris, Sewell & Morris* and *Harris & Harris,* for appellant.

The only act of gross negligence relied upon by plaintiff is her allegation that the train was so assembled that the caboose was between the engine and loader and ten flat cars loaded with saw

logs.   If this be gross negligence, which in our opinion it is not, then the record is entirely silent as to any knowledge upon the part of the officers of the corporation that the train was so assembled, and plaintiff's witness, McKnight, states that the woods foreman directed that the train be so assembled, and upon this testimony the Court of Appeals has certified the question herein quoted, which we say under the following authorities should be answered "no":   Beaufort v. Southern Ry. Co., 48 S. W., 106; Bradshaw v. Buchanan, 50 Texas, 492; Flannary v. Wood, 73 S. W., 1072; Clark v. Pearce, 80 Texas, 146; Parks v. Young, 75 Texas, 278; Connelly v. Wood, 12 S. W., 615; White v. Stribling, 71 Texas, 108; Biering v. G. H. & S. A. Ry., 69 Texas, 578; Harris v. Finberg, 46 Texas, 79; Rogers v. Ferguson, 36 Texas, 544; Champion v. Vincent, 20 Texas, 811; Hudspeth v. Robertson, 18 Texas, 858; Walker v. Farmers & Merchants State Bank of Winters, 146 S. W., 312; Gary v. Wells, 40 S. W., 845; Frank v. Tatum, 26 S. W., 900; Alderson v. G. C. & S. F. Ry. Co., 23 S. W., 617; I. & G. N. Ry. Co. v. Brazzil, 14 S. W., 609; Missouri Pac. Ry. Co. v. Shuford, 10 S. W., 408; Cook v. Miller's Indemnity Underwriters, 240 S. W., 535; Vardeman v. Penn Mutual Life Ins. Co., 125 Ga., 117; Strong v. Western Union Tel. Co., 30 L. R. A., 409; Houston & T. C. Ry. Co. v. Cowser, 57 Texas, 293; Texas & Pac. Ry. Co. v. Barnhart, 24 S. W., 331; Western Union Tel. Co. v. Brown, 58 Texas, 170; St. Louis S. W. Ry. Co. v. McArthur, 72 S. W., 76, 97 Texas, 645; Texas & Pac. Ry. Co. v. Woodall, 2 Texas Civ. App., 471.

*Adams & Moore,* for appellee.

Who was in charge of the appellant's business at the time of the accident with full and plenary powers?   It cannot be said for a minute that any other than Mr. Anderson was the sole representative, with full and plenary power to represent the appellant, and under the above facts, as we view it, the knowledge is not only brought home to the appellant, but it, by and through its authorized representatives, recklessly and maliciously discharged the duty in such a manner as to make it gross negligence.

MR. JUDGE NICKELS delivered the opinion of the Commission of Appeals, Section A.

Mrs. Bob Williams, widow of Bob Williams, brought the suit against Chronister Lumber Company, a corporation, and sought recovery of exemplary damages upon allegations that his death

was caused by the gross negligence of the corporation (his employer). The matter of compensatory damages is not, presently, involved. From a judgment allowing that recovery, Chronister Lumber Company prosecuted its appeal and the case is now pending in the Court of Civil Appeals, Ninth District. That court has certified questions as follows:

*"Question One:* Can the gross negligence of the woods foreman, Harris Anderson, be imputed to appellant, thereby making appellant guilty of gross negligence and liable in exemplary damages to appellee?

*"Question Two:* Can the gross negligence of Harris Anderson be imputed to appellee's manager, S. W. Littlejohn, whom he represented and whose authority Anderson exercised in Littlejohn's absence, and, through Littlejohn, to appellant, making it guilty of gross negligence, and thereby liable to appellee in exemplary damages?

*"Question Three:* Did Littlejohn occupy such a relation to appellant as to make it liable in exemplary damages for his gross negligence, and, through him, liable for the gross negligence of the foreman, Harris Anderson, who exercised his authority in his absence, in the particular field of his employment—that is, as woods foreman?

*"Question Four:* In Railway Company v. Cowser, 57 Texas, 306, you said: 'Exemplary damages are allowed only for the wilful act, omission or gross negligence of the "defendant" to the suit, if a corporation, for the wilful act, omission or gross negligence of one representing it in its corporate capacity, as a corporate officer, but not of a mere ordinary servant or agent.' Under the proposition of law thus announced, did Harris Anderson represent appellant in its 'corporate capacity,' so that his gross negligence would be imputed to appellant, a corporation, thereby making it liable in exemplary damages for his gross negligence? Did Littlejohn represent appellant in its 'corporate capacity' in the sense in which that expression is used in the foregoing legal proposition?

*"Question Five:* On the issue of gross negligence and exemplary damages, what must be the official relation of the guilty servant to his master, a corporation, to make it liable in exemplary damages for his gross negligence?"

A digest of the relevant evidence is included in the certificate,

and the controlling facts shown will appear in the course of the opinion.

Sec. 26, Art. 16, of the Constitution declares that "Every person, corporation, or company that may commit a homicide through wilful act or omission, or gross neglect, shall be responsible in exemplary damages to the surviving husband, widow, heirs of his or her body, of such of them as there may be," etc. It will be noted that the provision does not name parents as being amongst those to whom the right of action is given. Whatever rights the surviving parents have depend upon, and are restricted by, the Death Statute (Arts. 2899-2903, R. S. 1879; Arts. 4694-99, R. S. 1911; Title 77, R. S. 1925) ; as to parents, the statute occupies a field not within the bounds of the constitutional provision cited. And this renders Houston & T. C. Ry. Co. v. Cowser, 57 Texas, 293, 305-6, unauthoritative here. Cowser and wife sued for damages (actual and exemplary) for the death of their adult son, caused by the (alleged) gross negligence of the railroad corporation, then acting by and through its "trainmaster" and train operatives. In respect of punitive damages, at least, they had no cause of action save that given (and limited) by the Death Statute then in force (Arts. 2899-2903, R. S. 1879). As said by Judge Bonner, the statute plainly exhibited a material distinction between death caused by act or omission of the "proprietor," or the "owner," etc., "of a railroad," on the one hand, and conduct of the "servant" or "agent" of such "proprietor." or "owner." As to actual damages, the statute provided cause of action whether the act or omission was by the one or the other; but for exemplary damages, it created the right only for the "gross negligence," etc., "of the defendant." The suit was against a railroad corporation (i. e. the "proprietor" or "owner" of a "railroad") ; it was predicated upon the neglect, etc., of a "servant" or "agent;" and the right to maintain it depended solely upon a statute providing the distinctions noted. Because the petition merely averred that death was caused by "the gross negligence and carelessness of the agents, servants and employes" of the railroad owner, the trial court sustained a demurrer to the claim for punitive damages, and this action, Judge Bonner held, was correct. Such are the conditions which circumstanced the ruling included in the excerpt quoted by the Honorable Court of Civil Appeals. But the present suit is not maintained against the "proprietor" or "owner" of a "railroad," and the right to maintain it is not dependent upon the Death Statute—for it was filed by the surviving "widow" against a corporation char-

tered to manufacture lumber. It is a suit of the nature allowed by Sec. 26, Art. 16, of the Constitution. Houston & T. C. Ry. Co. v. Cowser, therefore, does not give much assistance in the right determination of the questions certified. It may be remarked in passing, however, that, since the ruling was based upon the statutory distinctions mentioned, the opinion seems to imply that (but for those distinctions) the gross negligence of the "trainmaster" and operatives (who were not officers of the corporation, but were "servants" or "agents") would have been imputable to the corporation.

Unless a corporation is to be held liable in punitive damages for the grossly negligent acts or omissions of any one or more of its servants, agents, employes and officers, any answer that may be given the questions propounded will, of necessity, involve some distinctions arbitrarily drawn. The Constitution (in the provision quoted) uses the word "corporation" without any qualification whatever. The entity of a corporation is a mere concept resting solely in legal fiction. A corporation is an artificial being, without mind, soul, heart or life; it may not conceive a purpose, form or execute a plan, or do an act except through the agency of men or women. Whatever those men and women (acting singly or in confederation) may do in its name or behalf—at least, within the general scope of employment—represents it in action in the achievement of the charter purpose. This is true of its janitor and of its president. The felling of trees was essential to the making of lumber and the manufacture of lumber was necessary to its sale; and each intermediate (or related) step, was logically and practicably of as much importance as was any other step in accomplishment of the corporate object. The stroke of the woodsman's axe and the moving of the secretary's pen equally represented the lumber corporation in movement; each acted for it in his appointed sphere and each there embodied and gave life to the corporation itself. This finds some illustration in Western Union Tel. Co. v. Czizek, 264 U. S., 281, 284, 68 L. Ed., 682, where the act of a "receiving clerk" in taking and misplacing a message at a local office of the telegraph company is thus described and given effect: "The hand that holds the paper technically is the hand of the company, but no more at the beginning than at the end." It might properly have been added that insofar as the company had a hand with which to receive the message and thus work out its corporate function the "receiving clerk's" hand was, in actuality also, its member. Logically, therefore, the gross negligence (as also the omission

to use ordinary care) of an employe, of any grade, in respect to an act within the scope of employment is the gross negligence of the corporation itself, and a question of imputation, except as predicated upon inquiry into the scope of authority, could not arise. Yet, rightly or wrongly, the doctrine of immunity of the corporation from liability for exemplary damages in some instances has so firmly become *stare decisis* as to preclude its challenge now. Except for the two extremes, the general field has not been marked out and within it the boundary line between liability and immunity, in many of its stretches, must yet be platted as the facts of particular cases, as they may arise, require. The straight line across the general field indicated by the excerpt from Cowser v. H. & T. C. Ry. Co. (quoted in the certificate) is not the true line, in a comprehensive sense, because reason and justice will inject some meanderings.

The test of liability, *vel non*, we think, is the scope of the employe's authority. This is shadowed forth in the excerpt quoted by the Court of Civil Appeals from Cowser v. H. & T. C. Ry. Co. Judge Bonner there speaks of "one representing" the company "in a corporate capacity," e. g. "a corporate officer," and of "a mere servant or agent." Manifestly, there are "servants or agents" who represent corporations "in corporate capacities" but who are not "corporate officers" *eo nomine*, and, because of this, Judge Bonner must have used the phrase "as a corporate officer" merely as an illustrative example of "one representing it in a corporate capacity." Moreover, in a subsequent portion of the opinion he makes it plain that the requisite "criminal intent" (so-called) of a "servant or agent" may be imputed to the corporation "when the act has been authorized or ratified" by it. He wrote the opinion in Western Union Tel. Co. v. Brown, 58 Texas, 170, 44 Am. Rep., 610, also, and there the rule is thus stated:

"It is now the settled law of this State, that, to make a corporation liable for exemplary damages the 'fraud, malice, gross negligence or oppression' which must authorize and justify the same, must have been committed by the corporation itself, or some superior officer representing it in its corporate capacity; or, if committed by a subordinate servant or agent, the act must have been either previously authorized, or subsequently ratified or approved, by the company or such superior officer after knowledge of the fact."

And thus it was recognized that the negligent act, or omission, of servant or agent (not a "corporate" or "superior" officer) is the act or omission of the corporation if "previously

authorized." The rule, so restricted, appears to have the approval of the Supreme Court in opinions both prior and subsequent to that in Cowser v. H. & T. C. Ry. Co.; Hays v. Houston & G. N. Ry. Co., 46 Texas, 272, 281; International Ry. Co. v. Tel. & Tel. Co., 69 Texas, 277, 280-281, 5 Am. St. Rep., 45, 5 S. W., 517.

The scope of the employe's authority, therefore, being the true subject of inquiry in any case, mere nomenclature exerts no great force in determination of whether or not the corporation is to be held responsible (exemplarily) for the wilful or grossly negligent act or omission of a particular officer, agent or employe. That servant's title may govern his wage but not the effect of his conduct. The actualities of authority and its user, and not *ex parte* artificialities, are important.

The Chronister Lumber Company, in the achievement of its corporate purpose, maintained and operated a tram railroad for the transportation of timber and its employes. The maintenance and operation of this facility was an important and substantial element of its plant. To supply timber for its sawmill (another important and essential plant element) it maintained a "woods force" of employes, and, as stated, used the railroad for transportation between forest and mill. In charge of the "woods force" and the transportation operations it had a "woods foreman" (Harris Anderson). His duty and authority embraced superintendence of the logging and hauling operations—specifically, the make-up, speed and other details of operation of the train. "It was the trainmen's duty to comply with his orders." The corporation itself, as owner and user of the railroad, was charged with knowledge of the proper consist and arrangement, speed, etc., of the trains, and with the duty of correct application of that knowledge. This duty it delegated to the "woods foreman," without instructions (so far as we are advised) as to how the duty should be performed. It left to him the authority to place the caboose, in which the men were to ride, at the front instead of at the rear of the train, if he should so desire, and the power to control the speed, etc., of the train as thus made up. His authority in the premises was superior to that of the train operatives and of the employes who were to ride on the train. The train as arranged, and its operation as arranged, under Harris' "superintendence" was the train and the operation of the corporation itself, for all this was "previously authorized." If Harris was negligent in any of these respects, his negligence, whatever its degree, was that of the

corporation. Such is the inevitable result of applying the principles stated to the facts certified.

The Honorable Court of Civil Appeals states that "the evidence is sufficient to raise the issue and support a jury finding that Harris Anderson was guilty of gross negligence in the manner in which he made up and operated the log train, and that his negligence was the proximate cause of Bob Williams' death." We believe, therefore, that question No. 1, as certified, should be answered "Yes."

We do not perceive the materiality of questions Nos. 2 or No. 3, except as their subject-matter may be included in question No. 1, and to that extent they should receive the same answer. As to the remainder of the scope of question Nos. 2 and 3 we are without sufficient data upon which to formulate answers.

The excerpt from Cowser v. H. & T. C. Ry. Co. quoted in question No. 4 has been discussed above, and the answer to be made should be considered in the light of that discussion. The question should be answered "Yes."

The answer to question No. 5 should be: An "official relation," as commonly understood, is not requisite; the essential "relation" is that the act and the manner of its doing must have been previously authorized or subsequently ratified.

The opinion of the Commission of Appeals answering certified questions is adopted and ordered certified to the Court of Civil Appeals.      *C. M. Cureton,* Chief Justice.