## PEOPLE'S ICE CO. v. NOWLING.
(No. 3194.)

Court of Civil Appeals of Texas. Amarillo. March 13, 1929.

Rehearing Denied April 10, 1929.

Bonner, Bonner & Fryer and Virgil Childress, all of Wichita Falls, and E. C. Gaines, of Austin, for appellant.

Wm. M. Cramer, of Dallas, amicus curiæ.

Weeks, Morrow, Francis & Hankerson, of Wichita Falls, and H. O. Williams, of San Angelo, for appellee.

JACKSON, J. This suit was instituted in the district court of Wichita county, Tex., by the plaintiff, Catherine V. Nowling, the surviving widow of Martin A. Nowling, deceased, against the defendant, the People's Ice Company, to recover exemplary damages only.

Plaintiff alleged:

That her husband, Martin A. Nowling, died intestate on January 24, 1927, leaving no father or mother surviving and only one child, a son, who had long since reached his majority, and who had transferred to plaintiff all of his rights in and to the damages she sought to recover. That there was no administration on the estate of her deceased husband, and none was necessary. That on January 24, 1927, her husband was employed by the defendant as assistant engineer at $150 per month. That he, with others, was engaged in repairing the insulation of the walls of defendant's ice vault, the dimensions of which were something like 40x40 feet and 50 feet in height. That the work consisted of inspecting the walls, and, at points where damaged cork was found, removing and replacing it with new cork. That underneath the ceiling of the vault and along the walls were ammonia coils, consisting of iron pipes about $2\frac{1}{2}$ inches in diameter. That said coils ran along the walls and were supported in brackets suspended by iron rods with U-shaped loops or clamps attached to large beams running across the ceiling of the vault. That said ammonia coils were old, worn, and rusty, were filled with compressed ammonia gas highly volatile. That the brackets in which the coils were laid were shallow, and, if the coils were raised as much as about an inch, they would fall out of such brackets. That they were so ar-

ranged and constructed that weight applied at one point along the coil would raise it at some other point along the wall and cause the coil to jump or spring out of the brackets, break, and fall, and made the floor where the deceased was required to be an unsafe and dangerous place for him to do his work. All of which the defendant, through its officers and agents, knew or by the exercise of ordinary care would have known.

That Arthur C. Rayzor, who was vice president and general manager, and G. F. Collins, the chief engineer, of the defendant, had instructed H. K. Smith, the engineer who was in direct supervision of the plant, to repair the wall of the vault by removing the damaged cork and replacing it with new cork. That the said H. K. Smith was vice principal of the defendant, and was advised to use his own judgment and discretion as to the manner and method of making such repairs, and was responsible to the defendant for performing said work. That he had in his charge two other men besides the deceased, assisting in making the repairs, and all of them were required to follow his instructions.

That for the purpose of inspecting the walls, discovering the damaged points, and making the repairs required, H. K. Smith adopted the following method: A tackle was attached to the top coil on the east wall, which was about 50 feet from the floor, and which was connected with the top coils on the south and west walls of the vault. One end of the rope passed through a pulley and was fastened to a box or basket in which H. K. Smith and one other man were lifted to the various places along the said east wall for inspecting and repairing the damages thereto. That the deceased, with one man, stayed on the floor and assisted in hoisting said basket with H. K. Smith and his helper to the desired position along the east wall. That, at the time the deceased received his injuries, H. K. Smith and his helper had been raised a distance of about 25 feet up the wall from the floor, and the weight of the basket and the parties in it, which was about 450 pounds, and the swaying and shaking of the basket, caused by hoisting it with the tackle, raised the top coils along the south and west walls out of the brackets in which they were laid, and the coils broke and fell to the floor, one of which struck plaintiff's husband, inflicting injuries from which he died in less than an hour.

That the damaged places along the walls could have been reached safely and without danger by the use of a ladder or platform, but the method adopted and the means used were unsafe, dangerous, and hazardous, all of which was known to the defendant and H. K. Smith, or would have been known by the exercise of ordinary care, and that the death of Martin A. Nowling was directly and proximately caused by the gross negligence of H. K. Smith and the defendant and their utter disregard of the lives and safety of the workmen. That the deceased was not familiar with the construction of said room and equipment or of the dangers of the method adopted for the repairs, but that H. K. Smith was familiar with the construction of said room and the equipment and the method and manner used in making the repairs.

That the plaintiff and her deceased husband were married June 21, 1897, had lived together continuously until his death, and he had never failed to care for and support plaintiff. That at the time of his death he was 60 years old, in good health, and had attained a standing which insured increasing demand and compensation for his services. That she is 56 years old, and the death of her husband has placed her entirely on her own resources, as she was entirely dependent upon him for her support and maintenance. That, because of the injury and death of her said husband, she has been deprived of his support, and has suffered actual damages in some amount, but is not asking to recover any actual damages, and alleges these facts solely as a basis for the recovery of exemplary damages, which she is entitled to recover by reason of the wrongful acts and gross negligence of the defendant, which were the direct and proximate cause of the death of her husband, by which she was entitled to recover exemplary damages in the sum of $10,000.

The defendant made a motion to quash the citation served upon it, and filed what it designates its plea in bar, duly verified, in which it alleges: That, at the time of the death of Martin A. Nowling, on January 24, 1927, the defendant was duly qualified as a subscriber and carried a valid workmen's compensation policy of insurance issued by the Casualty Reciprocal Exchange for the protection of its employees, which policy was in full force and effect at the time the deceased was injured, and by the terms of which the insurer was bound to pay any employee of the defendant who might be injured in the course of his employment, or to his beneficiaries in case he was killed, compensation provided for in the Employers' Liability Act of the State of Texas. That the death of said Martin A. Nowling was due to accidental injuries received in the course of his employment under a contract of hire and while working as an employee of the defendant, and that his surviving widow, the plaintiff, thereby became entitled to and did, in fact, file claim for said compensation with the Industrial Accident Board of the State of Texas, and was awarded the sum of $5,993.72 by said board, which was promptly paid by the insurer and accepted by the plaintiff. That, by reason of these

facts, the defendant cannot be sued for actual damages and by the express allegations of her petition, she is not suing for actual damages, and therefore is not entitled to recover exemplary damages against the defendant.

The motion to quash and the plea in bar were by the court overruled, and the defendant answered by general demurrer and special exceptions, which, in substance, present the matters contained in its plea in bar, and in addition thereto urges the insufficiency of the petition, because it fails to show that H. K. Smith was not a fellow servant and coemployee with Martin A. Nowling, and fails to show any malice on the part of the defendant or any one toward the deceased. The defendant also pleaded general denial, and specially answered that the deceased was guilty of contributory negligence, assumed the risk incident to his employment in and about the ice vault, as he had many times assisted in the same work, knew the construction of the vault and the coils; that the injury and death of the deceased was an unavoidable accident and not the result of the negligence on the part of the defendant or its agents; that its vault was of modern type and construction, and built along the identical lines of all other modern ice storage vaults; that H. K. Smith and the deceased were fellow servants and co-workers, and that, by reason thereof, if the injury and death of the deceased was caused by the negligence of H. K. Smith, the defendant was not liable.

The court, in his charge, defined proximate cause, ordinary care, negligence, gross negligence, instructed as to the law on exemplary damages and as to what acts of the officers, agents, and employees of a corporation constitute gross negligence imputable to the corporation; and, on special issues submitted, the jury found, in effect, that the death of Martin A. Nowling resulted from injuries received by him while in the employ of the defendant; that the defendant company was guilty of gross negligence in the manner it used the basket device and its attachments and in fastening same to the pipes in their condition while doing the work in the vault; that such gross negligence was the proximate cause of the injury to and the death of the deceased; and that the plaintiff was entitled to recover $3,500 as exemplary damages.

On these findings, the court rendered judgment that the plaintiff recover from the defendant $3,500, with interest from the date of the judgment at the rate of 6 per cent. per annum and costs, from which judgment this appeal is prosecuted.

■ The appellant urges as error the action of the trial court in overruling its exceptions to the effect that appellee's petition was insufficient in failing to allege facts showing that the acts of H. K. Smith were the acts of the corporation, and that he was not a fellow servant, and in failing to allege gross negligence by the appellant or any person authorized to act for it or any ratification of any such gross negligence by any person authorized to act for the appellant.

The appellee alleged that Arthur C. Rayzor, the vice president and general manager, and G. F. Collins, the chief engineer of appellant company, instructed H. K. Smith, who was in direct supervision of the plant, to repair the walls of the vault and exercise his own judgment and discretion as to the manner and method of making such repairs; that H. K. Smith had in his charge the deceased and two other men who assisted in making the repairs, and all of whom were required to obey the instructions of H. K. Smith, and that the appellant, through its proper officers, had actual knowledge of the manner in which Smith was performing the work and approved it, as they visited said plant several times and observed the manner of the work during its progress.

In our opinion, the case of Chronister Lumber Co. v. Williams, 116 Tex. 207, 288 S. W. 402, is decisive against appellant's contention.

■ The appellant, by proper assignments, contends that, inasmuch as the admitted facts show that appellant was properly carrying compensation insurance, that the deceased, while in the course of his employment, received the injuries which resulted in his death, and also show that appellee, the beneficiary of the deceased, made application for and was awarded compensation by the Industrial Accident Board in the sum of $5,993.72, in cash, which was paid by the insurer and accepted by her, and also show that she did not seek to recover actual damages and she was not entitled to recover actual damages in this suit; that therefore she was not entitled to recover exemplary damages, and the court erred in overruling appellant's exception and its plea in bar setting up these matters as a defense.

"The gist of this point of contention by appellee is that as exemplary damages cannot be had except where actual damages may be recovered, and that as the deceased was an employee within the Compensation Act and covered by the policy carried by appellee, and that as appellants, under said law, were entitled to and did receive actual damages in the form of compensation, therefore they cannot maintain this separate action for exemplary damages against appellee, since they are not entitled to and cannot recover herein actual damages, notwithstanding article 5246 —7 of the Compensation Act.

"We think appellee's contention should be overruled. It is well settled that where actual damages are not recoverable, exemplary damages cannot be. However, we take it

that means that where the cause of action asserted, as shown by the facts adduced to support same, is not sufficient to support a recovery of actual damages, then no recovery of exemplary damages can be had, and not that both must invariably be recovered in the same suit. When actual recoverable damages have been sustained and settled for, without including any claim, for exemplary damages, the recovery of the former is not a prerequisite to a recovery of the latter in a suit for that purpose. Gregory v. Coleman, 3 Tex. Civ. App. 166, 22 S. W. 181. * * *

"Besides, the statute, article 5246—7, expressly reserves the right to sue for exemplary damages where the death of the employee is brought about by the gross negligence of the employer. This statute is in consonance with the well-established rule of law that for exemplary damages to be recoverable actual damages must also be recoverable, for, where the death of the employee is from an accident arising in the course of his employment, then actual damages are provided by statute, and the permission to sue the employer for exemplary damages arising out of the same injury, in a proper case, does no violence to the rule." Robertson v. Magnolia Petroleum Co. (Tex. Civ. App.) 255 S. W. 223. (D. W. O. J.)

In Castleberry v. Frost-Johnson Lumber Co. (Tex. Com. App.) 283 S. W. 141, the Commission of Appeals holds that, if the Texas Compensation Law is complied with, "the right at common law of an injured employee to recover exemplary damages arising from gross negligence of his employer was by express legislation as well as necessary implication abrogated," but that the Legislature "made a distinction between death cases and those not resulting in death," in order to comply with article 16, § 26, of the Constitution of the state. This seems to be in harmony with the construction of the Compensation Law by the Supreme Court in Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S. W. 556.

Under these authorities, it appears clearly that section 5 of article 8306, R. C. S. 1925, as now written, reserves to the surviving wife of a deceased husband, whose death was occasioned by the gross negligence of his employer, a cause of action against such employer for exemplary damages, and that it is not essential, where compensation has been paid by the insurer, for the parties to whom the statute reserves a cause of action for exemplary damages against an employer, to sue for and recover actual damages in the same suit.

The appellant admits in its brief that the cases cited supra hold that the representatives of the deceased may recover exemplary damages where workmen's compensation has been paid, without the recovery of actual damages, but its contention is that the law is not correctly announced in said cases. This assignment is overruled.

The appellant assigns as error the action of the trial court in rendering judgment against it for the amount found by the jury, because, before reaching a verdict the jurors agreed that each would write the sum to which he thought appellee was entitled, on a separate slip of paper, that the said sums should be added, and the amount thereof divided by twelve, and agreed that the amount so determined should constitute the verdict of the jury.

Eight of the jurors testified on the motion for a new trial, and their testimony disclosed that the jurors were not agreed on the amount that appellee should recover; that the amount in the minds of the different jurors varied from $1,000 to $10,000. Several of them testified that they were not able to reach a verdict, and that they agreed that each would write the sum he thought appellee should recover, upon a slip of paper, add these sums together, and divide the result by twelve, and that the result so determined should constitute their verdict; that they agreed to be bound by whatever it showed. One testified that the verdict so found did not represent his judgment, but, having been reached by that method, he accepted it. Another testified that he regarded the verdict so reached by lot as binding upon him. Another testified that it was agreed to stand by the verdict thus determined. They all admitted that each wrote the sum that in his judgment he thought appellee was entitled to recover, that the sum was divided by twelve, and, while the amount so reached was not exactly $3,500, that it was very near that amount, and, after some discussion, $3,500 was agreed to and returned as the verdict.

We have only stated very briefly the testimony of the jurors heard on the motion for a new trial, but in our opinion "the verdict, in material respects, is tainted with improper influence, and the certainty that there exists substantial ground for a reasonable doubt as to its purity." Moore v. Ivey et al. (Tex. Com. App.) 277 S. W. 106.

"Without regard to the language used by each juror in giving his testimony as to what occurred in the jury room, there can be no doubt, in our opinion, that the record, as a whole, exhibits grounds for reasonable doubt as to the purity of the verdict in this case, and, considering the record as a whole, such facts and circumstances appear that we believe it is reasonably certain that one or more jurors were influenced, and, such being the situation, a vicious effect must be assumed to have resulted upon the verdict." Gulf, Colorado & Santa Fé R. Co. v. Harvey (Tex. Com. App.) 278 S. W. 839.

"It is the settled law of this State that, 'if, upon a consideration of the whole or the

pertinent record, it is reasonably doubtful whether or not the improper conduct affected the amount of the verdict or the decision of any other material issue, the verdict should be set aside by the trial judge; if, in such a case, a new trial is not granted, there is an abuse of the discretion by the trial judge, and reversal becomes the duty of appellate courts.'" International-Great Northern R. Co. v. Cooper (Tex. Com. App.) 1 S.W.(2d) 578.

This assignment is sustained.

The appellant, by proper assignments, presents as error the action of the trial court in refusing to direct a verdict in its behalf, in refusing to give certain special issues requested by it; and challenges the sufficiency of the testimony to sustain the finding of gross negligence and assails the verdict as being excessive under the testimony.

All these assignments involve a discussion of the testimony offered in the trial of the case. The evidence shows that the testimony on the issues presented in the pleadings is not fully or satisfactorily developed, either on the cause of action alleged or the defenses pleaded, and, as the judgment must be reversed, we will refrain from discussing the evidence, as it is improbable that such alleged errors will occur on another trial.

Neither would it avail appellant anything or serve any good purpose to discuss the assignment of error assailing the action of the court in overruling appellant's motion to quash the service.

The judgment is reversed, and the cause remanded.