### ÆTNA LIFE INS. CO. v. LOVE et al.

#### No. 4056.

Court of Civil Appeals of Texas. El Paso.

Feb. 27, 1941.

Rehearing Denied April 10, 1941.

Johnson & Rogers, of San Antonio, for appellant.

Harry B. Berry, of San Antonio, for appellees.

PRICE, Chief Justice.

As plaintiffs, Tom Love, Victoria Houston and Cora Davis, recovered in one of the District Courts of Bexar County a judgment against Aetna Life Insurance Company, defendant, in the sum of $4,000. This appeal is perfected by the said defendant from that judgment.

This is the second appeal of this case. On the first trial verdict was instructed in favor of defendant, and plaintiffs appealed from the judgment. That appeal by transfer came before the Beaumont Court of Civil Appeals, where the judgment of the trial court was reversed and the cause remanded to the trial court. Love v. Aetna Casualty & Surety Co., 99 S.W.2d 646. The Supreme Court granted writ of error, but on review the Commission of Appeals affirmed the judgment of the Court of Civil Appeals. 132 Tex. 280, 121 S.W.2d 986.

For convenience the respective parties will be designated here as they were in the trial court.

Basically, practically the same pleadings and the same evidence are here involved as were in the former appeal, save and except the alternative allegations quoted in Love v. Aetna Casualty & Surety Co., supra, do not appear in the amended trial petition here. In short, the trial petition here makes no mention of the Justice of the Peace having ordered the autopsy. A brief statement of the nature and result of the suit is deemed to be all that is necessary.

Plaintiffs alleged that one was a brother of Orange Love, deceased, and the others were sisters. Damages were sought against the defendant on account of the alleged wrongful dissection and mutilation of the dead body of their brother, Orange Love, charging that the defendant unlawfully procured an autopsy on the dead body, and same was dissected and mutilated in the conduct of the autopsy.

Defendant's answer consisted of a general exception and general denial. The trial was before the court and a jury. The case was submitted upon special issues. Such special issues and the findings of the jury thereon were as follows:

No. 1: "Do you find from a preponderance of the evidence that C. E. Klein procured the performance of an autopsy on the dead body of Orange Love? Answer 'yes' or 'no.'"

Answer: "Yes."

No. 2: "Do you find from a preponderance of the evidence that C. E. Klein while procuring the autopsy, if you have so found in answer to Special Issue No. 1, was acting within the scope of his agency for the defendant, Aetna Life Insurance Company? Answer 'yes' or 'no.'"

Answer: "Yes."

No. 3: "Do you find from a preponderance of the evidence that C. E. Klein in procuring the autopsy, was acting as in the corporate capacity of the Aetna Life Insurance Company? Answer 'yes' or 'no.'"

Answer: "Yes."

No. 4: "Do you find from a preponderance of the evidence that upon the procurement of the autopsy by C. E. Klein, if you have so found, the defendant ratified such act? Answer 'yes' or 'no.'"

Answer: "Yes."

No. 5: "Do you find from a preponderance of the evidence that the plaintiffs were the next of kin to Orange Love at the time of his death? Answer 'yes' or 'no.'"

Answer: "Yes."

No. 6: "Do you find from a preponderance of the evidence that John R. Shook, as Justice of the Peace, ordered Dr. T. N. Goodson to perform the autopsy on the body of Orange Love? Answer 'yes' or 'no.'"

Answer: "No."

No. 7: "Do you find from a preponderance of the evidence that the said John R. Shook, as Justice of the Peace, in ordering the autopsy, if he did so order the same, acted in good faith for the purpose of detecting crime? Answer 'yes' or 'no.'"

Not answered. (Answer to this question was conditioned on an affirmative answer to No. 6).

No. 8: "Do you find from a preponderance of the evidence that prior to the time John R. Shook made the order referred to in question No. 6, C. E. Klein made a full, fair and truthful statement to the said John R. Shook, of the facts in his (Klein's) investigation had disclosed in reference to the case of Orange Love? Answer 'yes' or 'no.'"

Not answered. (Answer to this question was conditioned on an affirmative answer to No. 6).

No. 9: "Do you find from a preponderance of the evidence that C. E. Klein acted in good faith in relating the facts to the Justice of the Peace and for the purpose of enabling the Justice of the Peace to determine for himself whether the facts justified the ordering of an autopsy upon the body of Orange Love? Answer 'yes' or 'no.'"

Answer: "No."

No. 10: "What amount, if any, do you find from a preponderance of the evidence, if paid now, would fairly and reasonably compensate the plaintiffs for the procurement of the autopsy, if you have so found? Answer, giving the amount, if any."

Answer: "$2000.00."

No. 11: "Do you find from a preponderance of the evidence that such autopsy was procured maliciously? Answer 'yes' or 'no.'"

Answer: "Yes."

No. 12: "What amount of money, if any, do you find from a preponderance of the evidence, should be paid plaintiffs as exemplary damages? Answer, giving the amount, if any."

Answer: "$2000.00."

Defendant briefs its assignments under twelve propositions. None of these assignments attack the manner of the submission of the case by the court, but each and all attack findings of the jury as either lacking support in the evidence or being against the undisputed evidence.

The decision on the former appeal establishes as the law of this case, first, that if the defendant procured the autopsy in question to be performed without warrant of law on the body of Orange Love, his brother and sisters, if next of kin, and suffering damage thereby, have a cause of action; further, if the Justice of the Peace made an order for the autopsy to enable defendant to ascertain whether or not Orange Love had received the injuries in respect to which he claimed compensation, and not to ascertain whether or not the criminal law had been violated, that such an order was not a lawful order, and defendant could not justify the autopsy thereunder; that the evidence was sufficient to raise the issue as to whether or not the order had been procured by the defendant for that purpose; that from the making of the order there arose a presumption of fact existing authorizing its issue; that such presumption was a rebuttable presumption.

Defendant vigorously attacks the finding of the jury on special issue No. 6, finding, in substance and effect, that John R. Shook, as Justice of the Peace, did not order the autopsy in question. First ground of attack is that the pleading and evidence, being practically the same on this trial as on the former, the decision on the former appeal conclusively settled the issue in its favor; (2) that the finding is against the undisputed evidence; (3) it is against the great preponderance of the evidence.

In the opinion of the Commission of Appeals [132 Tex. 280, 121 S.W.2d 987], this statement is made: "It appears in testimony * * * On June 22, 1933, the dead body of Orange Love still being at the said funeral parlor, Judge Shook, a justice of the peace at San Antonio, telephoned Dr. Goodson, the County Health Officer of Bexar County, and ordered him to make an autopsy of the dead body. Dr. Goodson, in pursuance of said order, proceeded on the same day, with the assistance of Dr. Stout, to perform the autopsy."

For the pleadings and evidence on the former trial we can rely only on the opinions of the Court of Civil Appeals and the Commission of Appeals. It appears from these opinions that Mr. Klein and Dr. Goodson testified substantially as they testified in this trial. Klein, in substance, on the point at issue, that he first approached Dr. Goodson, the County Health Officer, as to an autopsy on the body of Orange Love. The doctor informed him that he could not make same unless he was ordered to do so by Judge Shook; that he then proceeded to the office of Judge Shook and laid the facts before him. Judge Shook ordered the autopsy. He then called Dr. Goodson on the phone and Judge Shook then took the phone and ordered Dr. Goodson to make the autopsy. Dr. Goodson testified that Mr. Klein called him on the phone, told him he was at the office of Judge Shook, and that Judge Shook had ordered the autopsy. He told him he didn't doubt his word, but that he would have to have the order from Judge Shook; that Judge Shook then took the telephone and made the order for the autopsy.

Dr. Goodson, we presume, was a witness for the plaintiffs, as he was on this trial.

Dr. Goodson testified that he did not present a bill to Bexar County for performing this autopsy; that he was paid $50 therefor by the defendant, and it seems, likewise, that Dr. Stout, the assisting physician, was paid for his services the sum of $50 by defendant.

On this trial Judge Shook testified. In substance and effect his testimony was that he had no personal recollection of the incident. He did not deny that he ordered the autopsy, but had no recollection of any conversation with Mr. Klein, the agent of defendant, prior to the holding of the autopsy; that if an inquest had been held a record thereof would have been made; that in some few cases an autopsy had been ordered and after coming in of the report nothing further was done; that in such cases the report was put in an envelope and placed in a can with the inquest papers.

It was established on this trial, or at least the evidence was sufficient to raise the issue, that there was no record in the office of the Justice of the Peace of an inquest on the body of Orange Love; that a search had been made for a report on the autopsy, and that same had not been found. The evidence of this search showed that it was made in the place indicated by the testimony of Judge Shook that such reports should be found, and that no such report was there found.

Whether this testimony as to the lack of a report of any inquest was before the court on the former trial, we do not know.

■ As we have stated, Dr. Goodson was the witness of plaintiffs, but in our opinion this would not preclude the plaintiffs from contradicting his testimony as distinguished from attacking his credibility. Western Union Tel. Co. v. Vickery, Tex. Civ.App., 158 S.W. 792; Sparks v. Johnson, Tex.Civ.App., 235 S.W. 975, 976; Latham v. Jordan, Tex.Com.App., 17 S.W. 2d 805; South Texas Coaches v. Eastland et al., Tex.Civ.App., 101 S.W.2d 878, 884.

■ One who calls a witness vouches for his credibility and cannot ordinarily impeach him to the extent of attacking his credibility. He does not vouch for his infallibility and constitute him one incapable of being mistaken.

Unquestionably, under the decision by which this trial was governed, and we are here governed, the establishment that the order was made created a presumption that same was lawfully and properly made, —a rebuttable presumption, of course. In order for this presumption to arise, how-

ever, it is necessary that it be established that the order was made.

If the order was made, it was made by parol, and there is no evidence that any record of same was ever made. We find in the law no requirement that any record should be so made. The only evidence that such order was made is the testimony of Mr. Klein and Dr. Goodson. We take it that the testimony of Mr. Klein, standing alone, would still leave the matter an issue of fact. Dr. Goodson, however, was plaintiffs' witness, and the law does not allow the same latitude for plaintiffs calling him as a witness as it did in the case of calling Mr. Klein. Dr. Goodson testified that Judge Shook transmitted the order to him over the telephone. If such be the case, it is fair to assume that it was only through the recognition of Judge Shook's voice that he knew that the order came from that source. In appraising the value of the testimony of a witness it is fundamental, we think, that the trier of the facts has a right to take into consideration the opportunity the witness had to gain a true impression as to the facts to which he testifies.

Clearly, Judge Shook had not the power to order an autopsy unless it was in connection with an inquest. Articles 968, 970, 972, Vernon's Annotated Code of Criminal Procedure. If Judge Shook held an inquest it was his duty under the law to make a written record thereof. Article 978, Vernon's Annotated Code of Criminal Procedure. He testified that in the cases in which he held an inquest he did make a record thereof. No such record was found of an inquest over the body of Orange Love. In this connection it should be stated that in some rare cases, Judge Shook testified, that the inquest proceeded no further than the autopsy. In such a case no record was made, and no charge was made therefor; but that the report thereof was ordinarily filed or placed in the inquest can. No such report of an autopsy in this case was found in the inquest can for the year 1933. There was evidence of a reasonably diligent search therefor. If this autopsy was lawfully held, Dr. Goodson was entitled to compensation therefor as provided in the Code of Criminal Procedure. No such claim was filed. Had such a claim been filed, as to the legitimacy and the amount thereof, it would have come under the scrutiny of the County Auditor of Bexar County and the Com-

missioners' Court. This circumstance, slight though it may be, possibly may not be considered, as it goes to Dr. Goodson's credibility rather than in contradiction of this testimony. However, in calling in Dr. Stout, there is no evidence that Dr. Goodson complied with Art. 971 of the Code of Criminal Procedure. In fact the evidence would indicate he did not. From the testimony, we think it may be fairly inferred that under the authority of the defendant Dr. Goodson employed Dr. Stout for the defendant. In any event, it appears that Dr. Goodson requested Dr. Stout to assist in the autopsy, and defendant paid Dr. Stout therefor. There is no evidence that it became necessary to determine whether the death of Orange Love had been produced by poison and the justice called him, as is provided in the applicable statute, Article 971, supra.

The facts appearing in evidence above narrated are negative in character, and the evidence as to the order was direct and positive. Even though this be true, in our opinion, they are sufficient to raise the issue.

If the issue was properly submitted under the pleading, the burden thereof was properly placed on the defendant. However, in our opinion the issue submitted in No. 6 was not an issue under the pleading on the trial. Plaintiffs' pleading on this trial differs from the pleading on the former trial. A reference to the former pleading, as stated by the Court of Civil Appeals, Love v. Aetna Casualty & Surety Co., supra, demonstrates that plaintiffs there pleaded specifically, although alternatively, that the Justice of the Peace ordered the autopsy. Such allegation and proof were part of plaintiffs' case. There, the burden was taken by plaintiffs of destroying the prima facie validity of the order. In such a case, if plaintiffs failed, it afforded justification for the defendant. In our opinion, in order to rely on the order as a justification, defendant should have pleaded the order in the state of the pleadings on this trial and not relied on a general denial as raising the issue.

Special issue No. 6 was, we think, intended to submit a defense rather than a part of plaintiffs' cause of action. The burden of establishing such defense was properly placed upon the defendant. If it properly arose under a general denial

the burden thereof was not upon the defendant. It seems to us that, in substance, this is the theory of the issue: that even though the autopsy was held and defendant procured same to be held, if same was ordered by the Justice of the Peace, a justification therefor, or at least a prima facie justification, was established. But such proof is not a denial of the facts alleged by plaintiffs, but an avoidance of their legal consequences.

In the case alleged in plaintiffs' former trial, it bore some remote analogy to the action of malicious prosecution. Here, there is some remote analogy in the case alleged to the action for false imprisonment. In the action for malicious prosecution it is elementary that plaintiff must negative the existence of probable cause. Not so in the case of false imprisonment, unless justification therefor be shown in the plaintiff's petition. Defendant, in order to rely on justification, must not only prove same, but as a basis for the proof must plead same. Cameron Compress Co. v. Kubecka, Tex.Civ.App., 283 S.W. 285, writ refused, and authorities cited therein.

In this case exemplary damages were sought. As bearing on this issue the proof was perhaps proper proof without pleading. McGehee v. Shafer, 9 Tex. 20; Shook v. Peters, 59 Tex. 393; Norris v. Casel, 90 Ind. 143.

Article 2006, R.C.S., provides: "A general denial of matters pleaded by the adverse party * * * shall be sufficient to put the same in issue."

Article 2189, R.C.S., that "* * * the court * * * shall submit the cause upon special issues raised by the pleadings and the evidence in the case. * * *"

In the case of W. L. Moody & Co. v. Rowland, 100 Tex. 363, 99 S.W. 1112, 1115, it is stated: "[where it] does not tend to rebut the facts of the plaintiff's case, but which show[s] an independent reason why the plaintiff should not recover upon the case stated and proved, then such defendant must plead the facts which will avoid the legal consequence of plaintiff's case."

If the issue submitted in No. 6 was not an issue under the pleadings, it is immaterial whether the finding was sustained by the proof or otherwise.

In the case of Aetna Casualty & Surety Co. v. Love, supra, the discussion is largely, if not entirely, confined to the alternative count of plaintiff. There, the order was averred in plaintiffs' pleading and an avoidance thereof alleged. The case here has not these features.

The assignments discussed are overruled.

■ Defendant's fifth proposition is in substance that there was no evidence that it ever ratified the act of Klein in procuring the autopsy. It was held in Aetna Casualty & Surety Co. v. Love, supra, that as to whether Klein was acting within the scope of his authority was a question of fact. This question was solved against the defendant. Probably the issue as to ratification, in view of the above finding, is immaterial save as to the bearing it may have on the issue as to the assessment of exemplary damages. However, we think the fact that defendant paid for the autopsy after same was made, used the report thereof in defense of a claimed liability against it, is ample to sustain the finding that it ratified Klein's act in obtaining same. There is an utter lack of evidence as to any want of knowledge on the part of defendant.

■ The finding that Klein did not act in good faith in laying the facts before the Justice of the Peace is assailed as being without evidence to support same. That this issue, in substance, was raised by the evidence is, we think, foreclosed by the opinion on the former appeal. In any event, we hold that same has support in the evidence.

■ The finding as to the $2,000 actual damages is alleged as lacking support in the evidence. We deem this assignment without merit.

The award of $2,000 as to exemplary damages is attacked (1) on the ground that there was no basis in the evidence for such award; (2) that the award was grossly excessive.

Beyond any question, defendant was, under the sustained findings of the jury, responsible for the acts of Klein in the premises. Its proposition is as follows: "No testimony being produced to establish that Klein, a local claim adjuster for the defendant, was the alter ego of the defendant corporation, or a vice principal thereof, or that he was acting 'as in the corporate capacity of this defendant,' there is no evidence in this case to authorize a recovery as against this defendant of exemplary damages."

In the statement under the proposition no mention is made of the jury's finding on special issue No. 3, under which it was found that in obtaining the autopsy Klein was acting in the corporate capacity of the Aetna Life Insurance Company. This issue, we presume, was propounded with the idea of ascertaining whether or not Klein was a mere servant or agent of the corporation, or had been entrusted by it with more extensive authority. The explanation given by the court in connection with the issue, we think, conveyed this idea. It may have been that the issue was to an extent based on question No. 4, certified by the Court of Appeals to the Supreme Court, and set forth in the case of Chronister Lbr. Co. v. Williams, 116 Tex. 207, 288 S.W. 402. The question there propounded in substance was, did Harris Anderson represent appellant in its corporate capacity, and did Littlejohn represent appellant in its corporate capacity. The jury answered practically the same question here "Yes." No complaint, we believe, is made as to the form of the submission. It may be fairly inferred that Klein was in charge of the Claim Department of the defendant in the City of San Antonio. Under him were some six or seven employees. Under his own testimony his powers were broad and general with reference to the investigation and settlement of claims against the defendant. He gave an order on the defendant to pay Dr. Goodson for the autopsy. This order was honored and paid. So, as to Dr. Stout, who apparently had been employed by Dr. Goodson on behalf of the defendant to assist in conducting the autopsy. The basis of this inference lies in the fact that Dr. Goodson called Dr. Stout to assist in the autopsy, there being an entire absence of evidence that he was ordered by the Justice of the Peace so to do, or that he had requested the Justice of the Peace to authorize assistance in the autopsy. The defendant, it seems, paid Dr. Stout for the services rendered to it by him. Defendant introduced no evidence as to any limitation on the authority of the agent Klein. There is an absence of evidence to indicate but that it had complete notice at the time it paid Drs. Goodson and Stout for the autopsy under what circumstances and for whom same was held.

We are of the opinion that the evidence is sufficient to show that Klein was authorized by defendant to act in such a manner that his malice would be attributable to the defendant. The assertion is made by appellant that a finding of malice on the part of Klein is not sustained by the evidence. He knew for what purpose he sought the autopsy. It was not for the enforcement of the penal laws, but to further the financial interest of defendant. No one better than he knew that there was not a shadow of a suspicion that a violation of the criminal law was involved in the death of Orange Love. In this connection a wrongful act done intentionally in violation of the rights of another is sufficient to constitute malice.

Furthermore, we think the evidence of ratification is sufficient to subject defendant to liability for exemplary damages.

Where the act is that of the corporation, or of "one representing it in a corporate capacity," it may be held for exemplary damages. Chronister Lbr. Co. v. Williams, 116 Tex. 207, 212, 288 S.W. 402, 404.

We think there is no merit in the assignment that the $2,000 awarded as exemplary damages is excessive. Plaintiffs were forced to resort to witnesses whose every interest was to justify the autopsy. Under the holding on the former appeal as the law of this case, plaintiffs were entitled to have the facts found by the jury. The jury had now determined the facts in their favor. The findings reflected a wanton disregard of the rights of plaintiffs. An unjustified successful attempt to make the provision of the laws for the detection of crime subserve its private interest is attested by the verdict, which is sustained by the evidence.

We find no reversible error in the case.

It is ordered that the case be affirmed.