Maudy Laudine Collier KING et al.,
Appellants,

v.

KEYSTONE–FLEMING TRANSPORT,
Inc., Appellee.

No. 6653.

Court of Civil Appeals of Texas.

Amarillo.

Feb. 25, 1957.

Rehearing Denied March 25, 1957.

Clyde W. Woody and William E. Naler, Houston, for appellants.

McWhorter, Cobb & Johnson, Lubbock, H. E. Griffith, Lubbock, of counsel, for appellee.

NORTHCUTT, Justice.

Under the record in this case we believe the statement made by the appellee as to the nature and result of this suit is correct and we adopt the same as a correct statement, which is as follows:

"This appeal is from a judgment rendered on an instructed verdict given in Cause No. 25798 in the 72nd District Court of Lubbock County, Texas, Honorable Robert H. Bean of the 140th District Court presiding under Rule 330 of the Texas Rules of Civil Procedure. The cause below was a suit for exemplary damages, brought by the surviving wife and children of Earl Cecil Collier, who died as a result of burns sustained in an accident on or about April 26, 1953, in Lynn County, Texas, while he was engaged in the course and scope of his employment with appellee, Keystone-Fleming Transport, Inc., a Corporation, of Lubbock County, Texas. The suit was originally filed in the 106th District Court of Lynn County, Texas, and was transferred to Lubbock County following plea of privilege filed by defendant (plaintiffs having withdrawn controverting affidavit).

"Appellant, Clyde W. Woody, is guardian ad litem of the minor plaintiffs below, Earline Kaye Collier and Cecil Faye Collier, the surviving posthumous children of Earl Cecil Collier.

"Recovery sought is for exemplary damages.

"The deceased was a truck driver employed by Keystone-Fleming Transport, Inc. In the course and scope of his employment he hauled butane and/or propane in tank trucks, both to wholesale and retail customers of appellee, and also hauled from the refinery to storage tanks of appellee. The equipment furnished to and operated by the deceased was a truck-tractor unit, equipped with 'double barreled' tanks (two tanks mounted upon a trailer unit situated parallel to each other), specially designed to haul liquefied petroleum products. He was an experienced driver of this type of equipment, having worked for appellee in prior peak seasons, and, at the time of his death, had been working during the 'peak' season of 1953 for appellee. He was earning about Sixty and 00/100 ($60.00) Dollars per week at the time of his death.

"The deceased and another employee of appellee, one William Merrill Jenk-

ins, also a driver for appellee, on the day prior to the accident, reported to work at the usual time, approximately 6:00 p. m. on April 25, 1953. They were each assigned to proceed to a refinery near Sundown, Texas, and to load liquefied petroleum products, butane and propane, and deliver the same to one of appellee's customers near O'Donnell, Texas. This was the first trip over the route from Sundown to O'Donnell for Jenkins. Collier, the deceased, was familiar with the route. Jenkins was instructed to follow Collier in this operation.

"The two (2) trucks arrived at the Sundown refinery at around 10:30 to 11:30 p. m. and were loaded there. There is no showing as to the whereabouts of the two (2) trucks or the routes taken by them in going from Lubbock to Sundown, Distant in driving time, about one and one-half (1½) hours. The trucks left Lubbock between 6:00 and 7:00 p. m. After loading at the Sundown Refinery, the two (2) trucks were involved in an explosion and fire shortly after midnight on April 26, 1953, at a point some few miles west of Tahoka, in Lynn County, Texas (about forty (40') minutes driving time from the Sundown Refinery). Both of the drivers of the trucks lost their lives as result of the explosions and fire. Collier, plaintiffs' decedent, survived following the explosion until about 6:30 a. m., when he died at Tahoka Hospital and Clinic, in Tahoka, Texas. The accident, explosion and fire occurred on Highway 380, a highway leading from Brownfield to Tahoka, at a point at or just past the intersection of a farm road leading to O'Donnell, Texas. The trucks, following the accident, were located just past (East) of the turn into the farm road to O'Donnell.

"Following the conclusion of plaintiffs' case, defendant moved for peremptory instruction, which was granted by the Court, with verdict, and judgment in accord therewith, that plaintiffs take nothing by their suit."

From this judgment appellants, plaintiffs below, perfected this appeal.

By appellants' first point of error they contend the trial court erred in allowing the appellee to plead and introduce into evidence the records showing the appellants were protected under the Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq., and had recovered judgment therein and the judgment had been affirmed. It being the contention of appellants that such pleadings and evidence were prohibited under Article 8306, Section 5, T.R.C.S., as follows:

"Sec. 5. Nothing in this law shall be taken or held to prohibit the recovery of exemplary damages by the surviving husband, wife, heirs of his or her body, or such of them as there may be of any deceased employé whose death is occasioned by homicide from the wilful act or omission or gross negligence of any person, firm or corporation from the employer of such employé at the time of the injury causing the death of the latter. In any suit so brought for exemplary damages the trial shall be de novo, and no presumption shall exist that any award, ruling or finding of the Industrial Accident Board was correct. In any such suit, such award, ruling or finding shall neither be pleaded nor offered in evidence."

We think it is so well established as the law in Texas that no recovery of exemplary damages can be had unless the plaintiff sustained actual loss or injury that no citations of authorities are necessary. The above statute has reference to a plaintiff pleading and offering proof of an award ruling or finding to establish actual loss or injury and in that manner relieving the plaintiff of showing actual loss or injury. Where one has recovered for injury or

death under the Workmen's Compensation Act that fact cannot be pleaded or offered in evidence to establish actual loss or injury but in a suit for exemplary damages the trial shall be de novo and the plaintiff must plead and prove actual loss or injury before he can recover actual damages.

■ Where the defendant is protected under the Workmen's Compensation Act from actual loss or injury, the plaintiff cannot again recover for the actual loss or injury in his suit for exemplary damages; but may recover exemplary damages. Unless the defendant be permitted to show in some manner that he should not be compelled to pay for the actual loss or injury he would be compelled to pay the judgment for the actual loss or injury although he was protected under the Workmen's Compensation Act, and the plaintiff would be in the position of collecting twice for the actual loss or injury. We think the proper way of showing the plaintiff had recovered or was entitled to recover, if he was injured, under the Workmen's Compensation Act, and that the defendant was not liable for actual loss or injury because he was covered under the Workmen's Compensation Act is by pleading such ·fact and proving thereof to the court out of the hearing of the jury as was done in this case. We overrule appellants' first point of error. It is stated in the case of Fort Worth Elevators Co. v. Russell, 123 Tex. 128, 70 S.W.2d 397, at page 409, as follows:

"* * * The rule in Texas is that exemplary damages cannot be recovered unless the plaintiff is shown to have sustained actual loss or injury. There can be no recovery of exemplary damages in the absence of a recovery of actual damage. A verdict of *nominal* actual damages is not sufficient. 13 Texas Jurisprudence, pp. 240, 241, § 132, and cases cited in the notes. In this case actual damages are not recoverable because the plaintiff in error carried workmen's compensation insurance. However, we do not believe that the compensation act changes the rule. We are of the opinion that in order to recover exemplary damages the plaintiff must show himself *entitled* to recover actual damages, and which he would recover but for the compensation act. Moreover, the rule in this state is that the amount of exemplary damages allowed must be reasonably proportioned to the actual damages found. 13 Texas Jurisprudence, p. 248, para. 138, and cases cited in the notes. It follows from the rules stated above that in this case the jury should have been asked to find whether or not the defendants in error sustained actual damages by reason of the death of Russell, and, if so, the amount thereof."

■■ However, should we be wrong in our views as to the manner of interpreting the above Article 8306, Section 5 and the appellee was in error in presenting the matter to the trial court in the absence of the jury, we think under this record such action would be harmless ·because appellants failed to show the appellee guilty of gross negligence. Before appellants could recover exemplary damages they must show the death of Mr. Collier was occasioned by homicide from the willful act or omission or gross negligence of the appellee. This they did not do.

In determining whether the appellants should recover exemplary damages as against the appellee, we cannot improve upon the statement made by the Supreme Court in the case of King v. McGuff, 149 Tex. 432, 234 S.W.2d 403, at page 405, where it is stated:

"While the bulk of our decisions of this subject of the master's liability in exemplary damages for the gross negligence of the servant are those involving corporate masters and large enterprises, and indeed the only authority cited below, Chronister Lumber Co. v. Williams, 116 Tex. 207, 288 S.W. 402, opinion adopted by this court, is just such a case, the general rule prevailing in Texas may, for the purposes of this

suit, be stated the same as in the Restatement, Torts, § 909, as follows:

" 'Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if,

" '(a) the principal authorized the doing and the manner of the act, or

" '(b) the agent was unfit and the principal was reckless in employing him, or

" '(c) the agent was employed in a managerial capacity and was acting in the scope of employment, or

" '(d) the employer or a manager of the employer ratified or approved the act.'

"See Ft. Worth Elevators Co. **v.** Russell, 123 Tex. 128, 70 S.W.2d 397; Morton Salt Co. v. Wells, 123 Tex. 151, 70 S.W.2d 409; Southwestern Gas & Electric Co. v. Stanley, 123 Tex. 157, 70 S.W.2d 413. Our decisions on the analogous subject of charging a master or principal with exemplary damages for the malicious misconduct of a servant or agent involve both individual and corporate defendants and follow the same general principles applied in cases of gross negligence. See Commonwealth of Massachusetts v. Davis, 140 Tex. 398, 168 S.W.2d 216, and cases cited at page 225 of the latter report.

"There is clearly nothing in the foregoing including the Chronister Lumber Co. case, to warrant making a public example of an individual or corporate employer simply because the callous misconduct of his or its servants

occurred, in a general sense, within the scope of their employment. There is nothing in the present record to indicate that the employees were other than mere servants or that petitioner was reckless in employing them."

There is nothing in the record to even indicate that appellee authorized the doing and the manner of the act. We do not believe there is any evidence to definitely determine what really caused the accident. The two employees were on their own as to driving. There is nothing to show appellee even had any idea or information that Jenkins was an unfit employee or driver. Mr. Young, the person representing appellee in employing drivers, had watched Jenkins handling the truck there at appellee's place of business where they unloaded, saw his drivers' license, instructed Jenkins how far behind the other truck to drive, sent him out with the old driver first and accepted the old driver's recommendation as to whether he was a competent driver. Under this record it cannot be said the principal was reckless in employing Jenkins, and there is no other contention that the accident could have been caused in any manner by the acts of anyone other than Jenkins. Certainly, Jenkins was not employed in a managerial capacity or neither did the employer or manager ratify or approve his acts. See also the case of Valencia v. Western Compress & Storage Co., Tex. Civ.App., 238 S.W.2d 591, writ refused, N.R.E.

We do not believe there is sufficient evidence to establish just what did cause the accident in question but even if the accident were caused by the bumping of Collier's truck by Jenkins' truck, we are unable to see where the appellee was guilty of any act, omission or gross negligence causing the death of Mr. Collier. Judgment of the trial court is affirmed.