## Morton Salt Company v. Nora Wells et al.

No. 6127.   Decided March 14, 1934.
(70 S. W., 2d Series, 409.)

*Harry P. Lawther, Shelby S. Cox, Wm. M. Cramer, James P. Swift,* and *Owen H. George,* all of Dallas, and *Earl M. Greer,* of Wills Point, for plaintiff in error.

At common law there could be no recovery for injuries resulting in death.

Plaintiff's cause of action for exemplary damages on account of gross negligence, if any they had, is given by Article 4673 of the Death Statutes, by the express provisions of which the defendant is not liable for the acts of gross negligence of its agents and servants, and the rule of *respondeat superior* does not apply.

Cotton Press v. Bradley, 52 Texas, 587; Guiterrez v. El Paso & N. E. Ry. Co., 102 Texas, 378, 117 S. W., 426; Farmers & M. Nat. Bank v. Hanks, 104 Texas, 320, 137 S. W., 1120; Elliott v. City of Brownwood, 106 Texas, 292, 166 S. W., 1129; Sullivan Sanford Lumber Co. v. Cooper, 105 Texas, 21, 142 S. W., 1168.

*Crawford & Fletcher,* of Grand Saline, and *Jones & Jones,* of Mineola, for defendants in error.

The duty in this case was clearly that of the corporation and could not be delegated, so the corporation, the Morton Salt Company, was liable for the negligence, although it might have been due to the acts of the agent. Quinn v. Glenn Lumber Co., 103 Texas, 253, 126 S. W., 2; Peoples Ice Co. v. Nowling, 16 S. W. (2d) 976; Chronister Lumber Co. v. Williams, 116 Texas, 207, 288 S. W., 402; Galveston, H. & S. A. Ry. Co. v. Cook, 16 S. W., 1038; Dallas City Ry. Co. v. Beeman, 11 S. W., 1102; 39 C. J., p. 285, sec. 412.

MR. CHIEF JUSTICE CURETON delivered the opinion of the Court.

This is a suit for exemplary damages brought by the defendants in error, Nora Wells and children, against the plaintiff in error, Morton Salt Company, for the death of the husband and father, Arthur Wells, due, it is claimed, to the gross negligence of the Company. Arthur Wells, at the time of his death, was in the employ of the Salt Company at its salt works in Grand Saline, Van Zandt County. The Company carried workmen's compensation insurance, and the defendants in error were awarded, and received, the statutory amount from the insurance carrier. Only exemplary damages for death due to *"gross neglect,"* provided for in Sec. 26, Art. 16, of the Constitution, are involved in this action. Judgment was rendered for the defendants in error by the trial court, and upon appeal the case was affirmed by the Court of Civil Appeals. (35 S. W. (2d) 454).

■ We agree with the Court of Civil Appeals that the District Court had original jurisdiction, without the presentation of the claim for exemplary damages to the Industrial Accident Board. The cause of action here asserted is one given by the Constitution, and the Legislature was without power to add to or take from the conditions under which by virtue of the Constitution, it could be maintained, nor did it attempt to do so. Fort Worth Elevators Co. v. Russell, this day decided by this Court, 123 Texas, 128. The material facts are thus summarized by the Court of Civil Appeals in its opinion:

"The material facts are these: Defendant collected bulk salt in a large room at its plant at Grand Saline, Texas, which was later dug out by machines called 'the digger,' transferred through a hopper to a buggy or cart, and conveyed to the drier. The digger machine was covered with metal, stood on three

wheels, was operated by an electric motor, the current for such purpose being transmitted by cable of copper wires incased in rubber, about 40 feet in length, extending from the top of the building and entering the machine through an iron tubing 18 inches to 2 feet in length, the movements of the machine being directed and controlled exclusively by uninsulated metal levers. At the time Wells was killed, the machine had been in use several years, was worn, had developed considerable vibration, in damp weather would become so charged with electricity as to shock and sting on being touched. The cable had been used since 1926, its insulation in places had become worn, and several weeks prior to the accident the rubber casing at the point where it entered the machine caught fire and burned about 3 feet. The evidence justifies the conclusion that, on reasonable inspection by one possessing knowledge of electricity, the condition of the cable, its insulation, the coils of the motor, and the machine, would have been disclosed, but that such inspection was not given. The levers could have been handled with safety had they been properly insulated, or the machine could have been equipped with grass rope instead of metal levers, and operated with safety. There was no device in use to indicate when the machine was charged, or to automatically stop its operation when in such condition, although such devices could have been installed. Wells was shocked and knocked down, while operating the digger machine, the day before being killed, and on this fact being reported, the matter was referred to a Mr. Guinn, defendant's employee in charge of all of the electrical problems of the plant, who took the motor out, kept it several hours, reinstalled it the same afternoon, stating at the time that it had been repaired. After the motor was reinstalled, the machine was operated by the night shift and for a short while next morning, without unusual incident, until Wells was shocked and killed while in the act of handling a lever in the operation of the machine."

In addition to this summary, which is a very conservative statement of the record, we will say that the superintendent of the company's plant some time prior to the death of Wells, and its superintendent at the time of his death, as well as the acting superintendent at that time, all knew of the dangerous condition of the machine which killed him.

Upon the trial, the Court submitted questions touching the Company's gross negligence, and the jury found that it was guilty of gross negligence:

(a) "In causing to be maintained and used in their plant a machine which was worn and delapidated";

(b) "In reference to the manner in which the electric wires attached to the machine in question, and as to their insulation";

(c) "In regard to its failure to have levers attached to the machine in question insulated";

(d) "In regard to its failure to have an automatic light bulb or fuse-block attached to the wires connecting the machine in question."

The Court of Civil Appeals found that the facts sustained the verdict of the jury, and with that conclusion we are in accord. The plain facts are that for years the Company provided for the use of its employees a dangerous machine; and although its infiirmities increased with use and age, efforts to render it safe, if any were made, were but of the slightest character.

■ We, of course, subscribe to the doctrine that a corporation usually can not be held liable in exemplary damages for the gross negligence of its ordinary employees performing ordinary delegable duties. But we have no such case before us. The duty of a master to exercise ordinary care to provide his servants with reasonably safe appliances and instrumentalities with which to perform their duties is an absolute and continuing duty, and can not be delegated in such a way as to relieve the master from liability. It was the non-delegable or absolute duty of the Company in this case to exercise ordinary care to provide Arthur Wells with a reasonably safe machine with which to do his work, and by inspection and repair to keep it in that condition.

On this question the Court of Civil Appeals in its opinion correctly said:

"Applying the rule to the facts under consideration, we encounter no trouble in reaching the conclusion that defendant was liable for gross negligence of its electrician, Mr. Guinn. Furthermore, the cumulative effect of the findings of the jury is that defendant was guilty of gross negligence in failing to discharge the nondelegable duty imposed by law upon it as master to furnish Wells, its servant, with safe, suitable appliances and instrumentalities for the work in hand. This duty was a continuing one and included that of adequate inspection, therefore defendant was liable for the negligence of one to whom the performance of such duty was entrusted. See 39 C. J., 285, sec. 412; Quinn v. Glenn, 103 Texas, 255, 126 S. W., 2; Missouri, etc., Co. v. Ferch (Civ. App.), 36 S. W., 487, 489; St. Louis, etc., Co. v. Skaggs, 32 Texas Civ. App., 363, 74 S. W., 783, 786; Coca-Cola Co. v. Williams (Texas Com. App.)

209 S. W., 396, 397; St. Louis, etc., Co. v. Ewing (Texas Com. App.), 222 S. W., 198; Hines v. Flinn (Texas Civ. App.), 222 S. W., 679."

Other authorities are to the same effect. Labatt on Master & Servant (2d ed.), Vol. 4, sec. 1459, p. 4258, secs. 1496, 1497 (sub. b), 1498, 1511, and cases cited under these sections; Hough v. Texas & P. Ry. Co., 100 U. S., 213; Northern P. Ry. Co. v. Herbert, 116 U. S., 642; Northern P. Ry. Co. v. Peterson, 162 U. S., 346; Kain v. Smith, 80 N. Y., 458; Stephens v. Pacific Electric Ry. Co., 16 Cal. App., 512, 117 Pac. 559; Gunter v. Graniteville Mfg. Co., 18 S. C., 262, 44 Am. Rep. 573; Allen v. Standard Box & Lumber Co., 53 Or., 10, 96 Pac., 1109, 97 Pac., 555, 98 Pac., 509; Terrell Compress Co. v. Arrington, 48 S. W., 59; El Paso & S. W. Ry. Co. v. Smith, 108 S. W., 988; Missouri, K. & T. Ry. Co. v. Keefe, 84 S. W., 679; Houston & T. C. R. Co. v. Dunham, 49 Texas, 181; Commerce Mill & Grain Co. v. Gowan, 104 S. W., 916; Texas & P. R. Co. v. Thompson, 70 Fed., 944; Houston & T. C. R. Co. v. Marcelles, 59 Texas, 334; Sabine & E. T. R. Co. v. Ewing, 21 S. W., 700; M., K. & T. R. Co. v. Ferch, 44 S. W., 317; Moynihan v. Hills Co., 146 Mass., 586, 4 Am. St. Rep., 348.

In Section 1496 of Labatt, cited above, the author, speaking with reference to the rule in the majority of American states, says:

"A master must indemnify a servant who is injured by the negligence of a co-servant, when the delinquency consisted in a failure to discharge properly either the function of furnishing the instrumentalities with which the business is carried on, or the function of keeping those instrumentalities up to the legal standard of safety while they continue to be used."

Again ,in Section 1498, he states:

"Most of the courts which apply the doctrine illustrated by the decision cited under the last section have also adopted the doctrine that from the moment an instrumentality is, or by the exercise of reasonable care might have been, known to be defective, an absolute duty on the master's part arises either to remedy the defect or to cease using the instrumentality. This principle may be expressed in the form that the duty of furnishing suitable and safe instrumentalities for the use of the servants includes the duty of maintaining them in safe condition, or that the duty to provide safe instrumentalities is a continuous one."

With reference to the duty to inspect, Labatt (sec. 1511) states the rule as follows:

"Since neither the duty of seeing that the instrumentalities

of work, as originally supplied, satisfy the legal standard of safety, nor the duty of seeing that they continue, while in use, to satisfy that standard, can be adequately performed without a proper examination of the subject-matter, it would seem that, in any case in which an absolute quality is ascribed to these duties, a like quality ought as a necessary logical consequence, to be ascribed to the duty of examination, both as respects the time when the instrumentalities are first furnished, and as regards the period during which they remain in use."

In the case of Hough v. Texas & P. Ry. C., 100 U. S., 213, the Supreme Court of the United States, speaking with reference to the absolute duty of the master to furnish and maintain safe instrumentalities with which his servants are to perform their duties, in part, said:

"A leading case upon the question before us is *Ford* v. *Fitchburg Railroad Co.*, 110 Mass., 241. That was an action by an engineer to recover damages for injuries caused by the explosion of his engine, which was old and out of repair. His right to recover was disputed, upon the ground that the want of repair of the engine was due to the negligence of fellow-servants in the department of repairs.

"But the court said: 'The rule of law which exempted the master from responsibility to the servant for injuries received from the ordinary risks of his employment, including the negligence of his fellow-servants, does not excuse the exercise of ordinary care in supplying and maintaining proper instrumentalities for the performance of the work required. One who enters the employment of another has a right to count on this duty, and is not required to assume the risks of the master's negligence in this respect. The fact that it is a duty which must always be discharged, when the employer is a corporation, by officers and agents, does not relieve the corporation from that obligation. The agents who are charged with the duty of supplying safe machinery are not, in the true sense of the rule relied on, to be regarded as fellow-servants of those who are engaged in operating it. They are charged with the master's duty to his servant. They are employed in distinct and independent departments of service, and there is no difficulty in distinguishing them, even when the same person renders service by turns in each, as the convenience of the employer may require." In a subsequent portion of the same opinion, the court said: 'The corporation is equally chargeable, whether the negligence was in originally failing to provide, or in afterwards failing to keep its machinery in safe condition.' ".

The plaintiff in error did not perform its duty as above defined by us and its failure to do so, under the verdict of the jury, was gross negligence. Not only was it the nondelegable duty of the corporation to inspect and ascertain the condition of the machine, the defects of which caused Wells to lose his life, but its superintendent in fact was informed from time to time of the dangerous character of the machine.

The office of superintendent is ordinarily one of authority and control, and in the instant case his knowledge was plainly the knowledge of the corporation. If he was in fact the superintendent of the plant, a fact which we infer from the meager evidence on the question, with power to employ and discharge servants of the Company, keep the machines in order for his employees, and generally perform the duties which attach to such an office, he was obviously the *alter ego* of the corporation, for whose grossly negligent acts the Company would be liable in exemplary damages. Fort Worth Elevators Co. v. Russell, supra. However, in this case the corporation was convicted upon sufficient evidence of gross negligence in failing to perform an absolute and nondelegable duty—that of exercising ordinary care to provide Wells with a reasonably safe machine with which to perform his duties. So it matters not whether the gross negligence was that of the superintendent, or some servant—the Company remains chargeable therewith. Fort Worth Elevators Co. v. Russell, cited above, and authorities therein cited.

The judgments of the Courts of Civil Appeals and the District Court are accordingly offirmed.