**UNIVERSAL TRANSPORT & DISTRIBUT-ING CO. v. CANTU et al.**

No. 9540.

Court of Civil Appeals of Texas. San Antonio.

May 29, 1935.

Rehearing Denied June 26, 1935.

See, also (Tex. Civ. App.) 75 S.W.(2d) 697.

Eskridge, Groce, Rice & Easterling, of San Antonio, D. O. Klingeman, of Karnes City, W. Porter Bondies, of Dallas, and Walter Groce, of San Antonio, for appellant.

Thomas B. Smiley, of Karnes City, for appellees.

BICKETT, Chief Justice.

This is an appeal by Universal Transport & Distributing Company from a judgment rendered in favor of Ables Cantu for $750 as damages for destruction of an automobile and for personal injuries sustained by him, and in favor of Andrew Cordoway and wife, Catherine Cordoway, for $750 as damages for personal injuries resulting in the death of their minor son, Joe Cordoway, and in favor of Virginia Cantu for $3,000 and Mary Louise Cantu and Gilbert Cantu, Jr., for $1,000 each as damages for personal injuries resulting in the death of Gilbert Cantu, their husband and father, respectively.

The several causes of action having arisen out of a single state of facts, the three cases, filed separately, were by agreement consolidated and tried together before the court without a jury.

On the. night of November 24, 1933, Ables Cantu, driving a Ford automo-

bile, ran into the rear end of a standing motortruck of appellant on highway No. 16 between Karnes City and Kenedy, resulting in injury to him and destruction of his automobile, and in the death of Joe Cordoway and Gilbert Cantu.

Appellant's southbound truck, having caught fire at about ten o'clock·that night, ·stopped on the right-hand, or west, side of the road. The truck had a large van type of body, and was heavily loaded. The fire started about the engine, and, apparently, was caused by a defective gasket, which had previously been reported by the driver to his superior. The evidence was conflicting as to whether the body of the truck was entirely off the line of the paved portion of the road; that most favorable to appellees was to the effect that the left rear corner projected over the pavement 2 or 3 feet. The road at that point was approximately 58 feet in width, of which the pavement was 18 feet, the abutting shoulder on each side was about 10 feet, and the ditch on each side was about 10 feet. The road from the north to that point is straight and unobstructed for a distance of 770 feet with an even decline of 7 feet. Opposite the truck, in the ditch on the east side of the road, there was a road grader, in or beneath which was a lantern light, and near which was a watchman's fire. At all times in question the truck had lighted the headlights, the taillight, and the rear· clearance light.

Soon after the truck stopped, the driver of an oil truck, which arrived on the scene and stopped, assisted with his fire extinguisher in putting out the fire. The standing position of this oil truck is not definitely shown by the evidence.

About that time, a northbound truck of appellant passed, pulled to the west side of the road, and stopped in line with the first one at a distance estimated at from 20 to. 100 feet. The northbound truck then stood on the shoulder clear of the pavement. There was testimony that the headlights of this truck were not lighted. At the moment of the collision, the driver of the northbound truck was opening the left door of the cab to go to the assistance of the southbound truck, and the driver of the latter was walking between the two trucks toward the northbound one to inform its driver that he needed no assistance.

Ables Cantu and both of the deceased persons in the front seat of the auto-mobile and three others in the "rumble" seat, driving southward, ran into the rear end of the parked southbound truck. The occupants of this car had made a round trip from Karnes City to Kenedy and were on the way back to Kenedy with the intention of later attending a wedding celebration. There was evidence of excessive hilarity upon the part of some of the occupants of the automobile. A bottle half filled with whisky was found in the car after the collision. A pistol was taken from the body of one of the deceased victims. And, a short while before, the shouts of one or more of them had attracted the attention of the constable in Kenedy to them. But Ables Cantu, the driver, denied that he had drunk any whisky that night, and was corroborated in that by Carlos Cantu, who sat directly behind him. According to Ables and Carlos, they were driving at about 25 or 30 miles per hour at the time of the collision, although others present at the scene at the time estimated their speed at from 50 to 65 miles per hour. Ables Cantu testified that he first saw the taillight of the southbound truck about 50 feet before he reached it, that his lights were good and sufficient to enable him to see the highway down to that truck, that there was nothing between him and that truck when he first observed it, and that, because. he did see it, he cut to his left, east, to avoid it. ·He also testified that on cutting to his left-hand, east, side of the road, he struck some object that caused him to lose control of his car and to collide with the rear end of the southbound truck. Carlos Cantu, also, testified that the car struck something just before the collision. But Ables and Carlos both testified that they did not see the object they claimed they first struck, and that they did not know what it was.

The theory of the appellees as to their asserted causes of action was that the appellant's northbound truck stopped on the east side of the road without front lights and obstructed the passage along the pavement, and that Ables Cantu's car struck that truck first and then went to the west side of the road to the point of final collision with the southbound truck.

The parking of the southbound truck on the west side of the road in the manner and under the circumstances shown did not constitute an act of negligence upon the part of the defendant, nor was such act a proximate cause of the collision.

The defective condition of the manifold, gasket, or other part, of the southbound truck which caused it to catch on fire was not a proximate cause of the collision.

■ The evidence is altogether insufficient to show that the. collision happened in accordance with the theory alleged by the plaintiffs. The northbound truck did not stop on the east side of the road, but on the west side. The passage along the pavement was, therefore, not obstructed as alleged, and, likewise, Ables Cantu did not strike the northbound truck on the east side of the road, after turning to that side, as he testified he did in order to miss the southbound truck which he saw lighted on the west side. As shown, neither Ables nor Carlos saw what it was that they claim to have struck after Ables turned to his left, the east. And the evidence as a whole fails to show just how the accident happened. Mere inferences cannot support a judgment. Atchison, T. & S. F. Ry. Co. v. Toops, 281 U. S. 351, 50 S. Ct. 281, 74 L. Ed. 896; Atchison, T. & S. F. Ry. Co. v. Saxon, 284 U. S. 458, 52 S. Ct. 229, 76 L. Ed. 397; Texas & N. O. R. Co. v. Warden (Tex. Com. App.) 78 S.W.(2d) 164.

■ The contention of the defendant that the force of the impact and the extent of the damage to the automobile show that the plaintiffs were traveling at an excessive and negligent rate of speed proximately resulting in the collision cannot be sustained. Those circumstances, while relevant to the issue, do not constitute such conclusive proof so as to warrant this court in holding as a matter of law that Ables Cantu was guilty of contributory negligence.

■ The undisputed evidence having shown that Amador Cantu, the father of Gilbert Cantu, Sr., was living, it was necessary that he be a party to the action for the recovery of any damages for the death of that decedent. Article 4675, Revised Civil Statutes of Texas (1925); East Line & R. R. Ry. Co. v. Culberson, 68 Tex. 664, 5 S. W. 820; Ft. Worth & Denver C. Ry. Co. v. Wilson, 85 Tex. 516, 22 S. W. 578; Galveston-Houston Electric R. Co. v. Reinle (Tex. Civ. App.) 264 S. W. 783; San Antonio & A. P. Ry. Co. v. Mertink, 101 Tex. 165, 105 S. W. 485.

The judgment of the district court is reversed, and the cause remanded.