**UNION TRANSPORTS, INC., Appellant,**

v.

**Charlie I. BRAUN et al., Appellees.**

**No. 3379.**

Court of Civil Appeals of Texas.

Eastland.

Aug. 1, 1958.

Rehearing Denied Oct. 24, 1958.

Supplemental Opinion Oct. 31, 1958.

Second Motion for Rehearing Denied Nov. 14, 1958.

Further Rehearing Denied Nov. 21, 1958.

House, Mercer & House, James D. Cunningham, San Antonio, for appellant.

Moursund, Ball, Bergstrom & Barrow, Rosson & McGown, San Antonio, for appellee.

COLLINGS, Justice.

This suit was brought by Charlie I. Braun, individually and as next friend of his two minor children, Charlotte Braun and James Allen Braun, against Union Transports, Inc. Plaintiffs sought damages for the death of their wife and mother, Haysel Braun, and Charles Richard Braun, their minor son and brother, occasioned by a collision between an automobile belonging to Charlie I. Braun and a transport truck belonging to the defendant. The defendant filed a cross-action against plaintiff Charlie I. Braun for damages alleged to have been sustained to its transport truck and for the complete loss of the full load of crude distillate which it was carrying. The case was tried before a jury which found that Don Woodward, the driver of the defendant's truck on the occasion in question, was guilty of certain acts of negligence which proximately caused the collision, and that Charles Richard Braun, the driver of the Braun automobile, was not guilty of any of the negligent acts which the defendant alleged were proximate causes of the collision. Based upon the verdict judgment was rendered for plaintiffs and against defendant for a total amount of $129,638.50, and it was decreed that the defendant take nothing by its cross-action. Union Transports, Inc., has brought this appeal. This case and a damage suit filed by Don Woodward against Charlie I. Braun were consolidated and tried together in the court

below. The Woodward case has also been appealed, but that appeal is separate and distinct from the appeal in the instant case.

The collision which is the basis of this suit occurred on July 10, 1956, about twelve miles south of the City of San Antonio on Highway 181, near the intersection of the Adkins-Elmdorf Road. At the time of and just prior to the collision appellant's truck driver, Woodward, was driving appellant's truck transport in a northerly direction toward San Antonio with a full load of crude distillate. The Ford automobile belonging to the Brauns was traveling south toward Kennedy. The only occupants of the Braun car were Mrs. Haysel Braun and Charles Richard Braun, both deceased. Woodward, the driver of appellant's truck, was the only eye witness to the actual collision who was available to testify. As heretofore indicated, the jury found that Woodward was guilty of numerous acts of negligence which were proximate causes of the collision. The specific acts of negligence found against Woodward were: that Woodward at the time of and immediately prior to the collision drove his truck at a rate of speed which was excessive under the circumstances, that he failed to keep a proper lookout, failed to keep the truck under proper control, and that he drove the truck across the center line of the road upon his left-hand side of the road.

It is contended in appellant's first and second points that the court erred in not sustaining appellant's motion for an instructed verdict and for judgment non obstante veredicto. Appellant contends that there was no evidence of any negligence on the part of Woodward proximately causing the fatal collision. Appellant urges in its first and second points and in numerous other points that there was no evidence to authorize the submission to the jury of any of the special issues inquiring about the alleged acts or that such negligent acts were, as found by the jury, proximate causes of the collision. We cannot agree with appellant's contentions in these points.

The rule is well settled that the findings of a jury and the judgment of a trial court will not be set aside if there is any evidence of probative force in support thereof. Cavanaugh v. Davis, 149 Tex. 573, 235 S.W.2d 972; Woodward v. Ortiz, 150 Tex. 75, 237 S.W.2d 286; 3-B Tex.Jur. 449, 450.

The statement of facts is voluminous, comprising more than four hundred fifty pages. In order to confine our discussion to a reasonable length, we will attempt to detail the evidence in support of the verdict in as brief and summarized form as possible. Concerning the speed at which Woodward was operating the truck in question, the witness Watson testified that immediately prior to the collision he had been following the truck for several miles as it proceeded northward toward San Antonio. He stated that he did not actually see the collision because the country was hilly and there was a hill to the south of and between him and the point of the collision which obstructed his view. Watson was operating a Cadillac automobile and testified that he had been driving for several miles at a steady, constant speed of 65 to 70 miles per hour; that he first noticed the truck when it was about a mile ahead of him and about two or three miles south of the point of the collision. He stated that from the time he first saw the truck until the time of the collision he had been gaining on the truck slowly and that in his opinion the truck was traveling five to ten miles per hour slower than he was. The effect of Watson's testimony was that in his opinion Woodward was driving the truck at a speed of 55 to 65 miles per hour. We cannot agree with appellant's contention that Watson's testimony concerning the speed of the truck over the two or three mile stretch that he followed it constituted such an uncertain premise as to amount to no evidence at all. Appellant's complaint is applicable to the weight of this testimony rather than to its probative value.

There was evidence to the effect that at the time of the collision the Ford auto-

mobile owned by Braun was proceeding south at a speed of 50 to 55 miles per hour. The Ford car was practically demolished by the collision and there is evidence to the effect that after the collision the transport truck traveled an additional distance of about 150 feet rolling over and over. The evidence further shows that the truck and trailer became separated and were damaged to such an extent that they were a total loss. This evidence had probative force not only on the question of the speed at which the truck was being operated but also on the control which was being exercised by the driver. Universal Transport & Distributing Co. v. Cantu, Tex.Civ.App., 84 S.W.2d 327 (Writ. Ref.); 61 C.J.S. Motor Vehicles § 516, p. 270.

 In addition to the above evidence concerning the speed of the truck Woodward testified that the truck was equipped with a tacometer which was a device for making a written record of its speed at any given time. Appellant failed to produce the tacometer with its recorded evidence of the speed of the truck or to explain in any manner its failure to produce same in evidence. The fact that appellant failed to produce the tacometer or to explain the failure to do so tends to strengthen the probative force of other evidence bearing upon the question of the speed of the truck, and is of itself of some probative force on the question. Hazelrigg v. Naranjo, Tex.Civ.App., 184 S.W. 316 (Writ Ref.); State v. Gray, 141 Tex. 604, 175 S.W.2d 224. In our opinion the evidence supported the findings of the jury and the judgment of the court bearing upon the issues of the speed of appellant's truck as being in excess of 45 miles per hour, as being excessive under the circumstances, and as a proximate cause of the collision. Biggers v. Continental Bus System, Inc., Tex., 303 S.W.2d 359.

The jury found that immediately prior to the collision Woodward was operating appellant's truck across the center line of the highway and upon his left-hand side of the road. The truck was loaded with crude distillate at the time. After the collision there was a trail of distillate three or four feet over the center line and on the west side of the highway, which was Woodward's left side of the road, for over three hundred feet before it terminated near the point of the collision where there were several large puddles which discolored the pavement. Both the truck and the Ford automobile, although badly torn up and scattered, came to rest on the west side of the road. The witness Black testified that he was following immediately behind the Ford automobile; that the Ford was at all times traveling in its proper lane of traffic on the west side of the highway; that he did not actually see the collision because the day was hot and he took his eyes off the road for a moment to wipe his forehead and at that instant the collision occurred. He said that after the collision he saw the truck and trailer turning over at which time they were completely on the west side of the highway; that he saw them come to rest on that side of the highway partly on the shoulder and partly on the pavement. Black was so close to the scene of the collision that distillate from the trailer sprayed his car. There was distillate or fuel oil around the trailer where it came to rest. Sometime after the collision crude distillate was still leaking out of the trailer and running down the side of the highway.

 The damage to the front end of the two vehicles supports the conclusion that the left front fender and left side of the bumper of the truck struck the right front portion of the Ford automobile. Also indicative of this fact was evidence to the effect that blue paint similar to that on the Ford car was found on the front bumper of the truck. The physical facts also indicate that the blow to the Ford proceeded from the right to the left side of that automobile tearing and shearing the motor loose. There was evidence to the effect that the bumper of the truck was higher off the ground than the frame of the Ford car, and the frame did not appear to be materially damaged. The motor and radiator and other heavy objects

on the front end of the Ford were completely separated from their mountings on the frame as a result of the collision. The evidence supports the conclusion that they were knocked to the Ford's left in an easterly direction. There was a deep gouge mark on the pavement approximately five feet east of the center line of the highway and in the north bound lane. It is appellee's theory and the evidence supports the conclusion that this deep gouge mark was made by the motor of the Ford when it struck the pavement. There was also a curved line dug in the pavement from the gouge mark to where the motor of the Ford came to rest on the west side of the road. Dr. Tonn, an expert witness called by appellees, testified that the gouge mark could not have been the point of impact unless there was a true head-on collision. He stated that there could not have been a head-on collision because the damage to the Ford was not the kind of damage that would have resulted from a head-on collision with appellant's large truck. He testified that in his opinion the point of impact of the truck and the Ford automobile was between five and fifteen feet to the west and south of the gouge mark in the pavement. We overrule appellant's point number fifty-one to the effect that the court erred in allowing Dr. Tonn to testify to his opinion that the impact occurred between five and fifteen feet to the south and west of the deep gouge mark. Appellant's objection to this testimony was that it was indefinite and uncertain; that under Dr. Tonn's testimony it would have been possible for the impact to have occurred on either side of the center line of the highway and that the matter was left up to the speculation of the jury. The ultimate fact issue to which this testimony was relevant was whether or not appellant's truck was being operated across the center line of the highway immediately prior to the time of the collision. The distance of the point of impact from the gouged place in the pavement was material to a determination of this question. The amount of force with which the Ford was struck by the truck was also a material evidentiary fact, and the amount of force would, of course, depend upon the speed of the truck and of the Ford automobile. The evidence indicates that the Ford was traveling at a speed of from 50 to 55 miles per hour. As previously indicated, it is our opinion that there was evidence to the effect that appellant's truck was being operated at a speed in excess of 45 miles per hour. Dr. Tonn testified that a minimum total speed of the two vehicles of 70 miles per hour would have resulted in knocking the motor a distance of five feet. Since the evidence supports the conclusion that a minimum total speed of the two vehicles was in excess of 95 miles per hour, the jury could well have believed that the motor was knocked more than five feet from the point of impact before it struck the pavement at the point of the deep gouge mark and, therefore, appellant's truck was being operated across the center line of the pavement at the time of the collision.

■ We also overrule appellant's fifty-second point in which it is urged in effect that the court erred in overruling its objections to Dr. Tonn's testimony based upon the assumption that the speed of appellant's truck at the time of the collision was 50 miles per hour. Appellant contends that it was error to allow calculations based upon an assumed speed of fifty miles per hour because there was no evidence of probative force to show the truck was traveling in excess of the speed limit of 45 miles per hour at the time of the collision. As previously noted there was in our opinion ample evidence to support the conclusion that appellant's truck was being operated in excess of 45 miles per hour or even as much as sixty to 65 miles per hour.

■ The evidence is amply sufficient to present fact issues for jury determination on the questions of the speed at which Woodward was operating the truck, whether or not the truck was being operated on the wrong side of the highway, the failure of Woodward to keep a proper lookout and to keep the truck under proper control. The opinion testimony of Watson concerning the speed of the truck was based upon his

knowledge of the speed at which he was operating his automobile and a comparison of the speed of appellant's truck which he, was approaching from the rear and was of probative force. Likewise, of probative force on these issues was the evidence of physical facts and conditions at the scene of the collision including the force of the impact, the deep gouge mark on the pavement and the testimony of Dr. Tonn in connection therewith, the distance traveled and the relative location of the final resting places of the truck and Ford automobile and of its motor, and the trail of distillate which was left on the west side of the highway. The evidence also supported the findings that each of the above described actions of Woodward constituted negligence and that each negligent act was a proximate cause of the collision. Collins v. Smith, 142 Tex. 36, 175 S.W.2d 407; Austin Road Company v. Willman, Tex.Civ.App., 303 S.W.2d 878; Chapman v. Evans, Tex.Civ.App., 186 S.W.2d 827 (RNRE).

■ In appellant's 34th and 35th points it is contended that the court erred in allowing the plaintiffs to introduce, over objection, plaintiffs' exhibit number ten which was a copy of a voluntary waiver of drivers license form bearing the signature of Don Woodward and dated July 18, 1956. Appellant also complains of the admission of testimony concerning proceedings before the Texas Department of Public Safety with regard to the cancellation of Woodward's drivers license. The objection made by appellant to exhibit number ten and the evidence in connection therewith was that the matter occurred after the accident in question, that it was a matter between Woodward and the Department of Public Safety and did not prove any facts about the accident, that it was prejudicial and irrelevant and immaterial to any issues in the case.

Appellant's 34th and 35th points are overruled. Material to a consideration of these points is the fact that this suit by the Brauns against Union Transports, Inc., was consolidated and tried together with the suit by Don Woodward against Charlie I. Braun, in which Woodward sought damages for alleged personal injuries sustained by him in the sum of $50,000. Woodward had testified concerning the damages and injuries alleged in his pleadings. He testified that he did not work for four and one-half months after July 10, 1956, and that the only reason he did not work during that period was because of the injuries which he sustained in the accidental collision with the Braun automobile. In this connection Woodward admitted in answer to questions from appellees' attorney that he had been examined by Dr. Omer Roan the day after the accidental collision and that x-ray pictures taken under the supervision of Dr. Roan did not show any physical injury or damage to Woodward at that time. It was in this condition of the record that appellees sought to obtain an admission from Woodward that the reason he did not work during the period in question was not because of any claimed injuries but because his drivers license had been cancelled and that he was prohibited by law from driving his truck. Woodward admitted that his license was cancelled on July 18, 1956, but he denied that that was the reason he did not work. Woodward was shown and admitted his signature on the waiver of drivers license form and thereupon that instrument was introduced in evidence as plaintiffs' exhibit number ten over the objection of Woodward and of appellant herein.

■ Exhibit number ten and the evidence in connection therewith were clearly admissible in the suit by Woodward against appellee Charlie I. Braun; no request, however, was made to limit the application of the evidence. Under these circumstances appellant cannot now complain of the admission of exhibit number ten and the evidence in connection therewith. Sears, Roebuck & Co. v. Jones, Tex.Civ.App., 303 S.W.2d 432 (RNRE); Armstrong v. Marshall, Tex.Civ.App., 146 S.W.2d 250; King v. Morris, Tex.Com.App., 1 S.W.2d 605.

■ In appellant's points numbers 36 and 37 it is contended that the court erred in refusing to submit appellant's requested special issues numbers five and six concerning appellant's defensive plea of sudden emergency. The special issues requested and the instructions in connection therewith defining the term "emergency" were in proper form. We hold, however, that the court did not err in refusing to submit such issues to the jury because they were not raised by the evidence.

Usually in a tort case findings of negligence on the part of a defendant or its employee which is a proximate cause of the plaintiff's injuries and that plaintiff is not guilty of any act of contributory negligence are sufficient to support a judgment for the plaintiff. However, the doctrine of imminent peril or sudden emergency is sometimes invoked as a defense to a charge of negligence. In the case of Goolsbee v. Texas & N. O. R. Co., 150 Tex. 528, 243 S.W.2d 386, 387, Chief Justice Hickman, speaking for our Supreme Court, discussed this question at length and stated as follows:

"Much is written in the briefs on the subject of 'Liability under the doctrine of imminent peril.' It is respondent's theory that 'the doctrine of imminent peril is a principle or basis of liability.' An expression in this court's opinion in Beck v. Browning, 129 Tex. 7, 101 S.W.2d 545, seems to lend support to the view that the doctrine of imminent peril is a basis of liability. While we fully agree with the decision in that case, we are unwilling to accept respondent's theory as an established principle in this court. *The doctrine of imminent peril is one which may be invoked to relieve a party of the consequences of his conduct, which otherwise would be held negligent.* It is most often invoked as a defense to a charge of contributory negligence. International & G. N. R. R. Co. v. Neff, 87 Tex. 303, 28 S.W. 283; Jackson v. Galveston, H.

& S. A. Ry. Co., 90 Tex. 372, 38 S.W. 745; Fort Worth & D. C. Ry. Co. v. Kimbrow, 131 Tex. 117, 112 S.W.2d 712; Foster v. Woodward, Tex.Civ. App., 134 S.W.2d 417, error refused. But it properly may be invoked as a defense to a charge of primary negligence. Dallas Ry. & Terminal Co. v. Young, Tex.Civ.App., 155 S.W.2d 414, error refused; Schroeder v. Rainboldt, 128 Tex. 269, 97 S.W.2d 679, 684 (approval of lower court's holding permitting submission of issues on defendant's sudden emergency.) In either instance it is invoked to lower the legal standard of care which a party must exercise to the point where conduct which otherwise might be regarded as negligent or contributorily negligent is not so regarded." (Emphasis ours.)

The evidence relied upon by appellant to raise the issue of sudden emergency is the following testimony by its truck driver Woodward:

"A. Well, I was coming in with that load and when I came over the grade I seen this car. It was a good ways in front of me and * * * I don't know * * * it was not a hill but up a little grade and I don't know whether he passed those two cars, or not, but he was a little on the wrong side but he came back over, and it looked like everything was going to be all right and then when he came back over he straightened up. I just let up on the gas and just before he got to me it looked * * * like. I don't know what happened. He just cut right into me and I jerked the wheel and when he did that I jerked the hand brake. The hand brake will lock the trailer wheels; and there was a stop sign there at the intersection and a car was at that stop sign. I had to think about him too. I did miss a head-on but I could not get out of his way and he was five or five and a half feet over the center line when he collided."

This evidence does not raise a fact issue involving the doctrine of sudden emergency under the pleadings and evidence in this case. That doctrine may be invoked to relieve a party of the consequences of his conduct in cases of emergency which otherwise would be held negligent. The witness Woodward did not testify to or admit any of the negligent conduct on his part which appellees alleged and other evidence showed. He, at all times, contended that he was confronted with an emergency in that the driver of the Ford automobile was approaching him on the wrong side of the road, that the automobile then straightened up and returned to its own right-hand side and then just before the collision "cut right into me". This testimony by Woodward does not entitle appellant to invoke the doctrine which excuses action which would otherwise be negligent, because it was done under circumstances arising suddenly and unexpectedly, requiring an instant decision to avoid the effects of sudden danger. On the contrary, the effect of Woodward's testimony is that negligent action on the part of the driver of the Ford automobile was the cause of the collision and that he, Woodward, was guilty of no negligence; that he observed the negligent conduct of the driver of the Ford and was conscious of the danger involved and did his best to avoid it, but he does not testify to any action which might ordinarily be considered negligence on his part for which appellant seeks to be excused because of the perilous situation under which Woodward was acting. The court did not err in refusing to submit appellant's requested special issues numbers five and six to the jury.

Based upon the verdict in answer to questions concerning the loss sustained by each of appellees as a result of the death of Mrs. Haysel Braun, judgment was entered for Charlie I. Braun in the sum of $65,000, for Charlotte Braun in the sum of $25,000.00 and for James Allen Braun in the sum of $25,000. Appellant contends that the answers to the damage issues are so highly excessive and unreasonable as to show that the jury was motivated by passion and prejudice and an utter disregard of the evidence and that the court erred in entering judgment on the verdict. Appellant also complains of the portion of the judgment based upon the verdict granting Charlie I. Braun $10,000 for the death of his son, Charles Richard Braun.

The mere fact that the verdict is large is not conclusive that it is the result of passion, prejudice, sympathy or other considerations not found in the evidence. 25 C.J.S. Death § 116, p. 1270. The rule concerning excessiveness of a verdict in such cases is set out in 13 Tex.Jur. 271, 272, as follows:

"It is a well settled general rule that where the law furnishes no legal measure of damages, and they are unliquidated, the amount to be awarded rests largely in the discretion of the jury; and unless the award is so large as to indicate that it is the result of passion, prejudice or corruption, or that the evidence has been disregarded, their verdict is conclusive and will not be set aside as excessive either by the trial court or on appeal."

The evidence shows that Mrs. Haysel Braun was 37 years of age at the time of her death; she had been married to appellee Charlie I. Braun since November, 1936. Prior to her accidental death Mrs. Braun had a life expectancy of 38.41 years and appellee Charlie I. Braun had a life expectancy of 31.17 years. Under these facts Braun's right to recovery was limited to and based upon his own life expectancy. Humble Oil & Refining Company v. Ooley, Tex.Civ.App., 46 S.W.2d 1038.

The evidence showed that Mrs. Braun was a good housewife and mother and that everything in the home was under her charge and supervision; that the entire family worked in the home and that she supervised the work; that for several

years she had worked and earned money and had been employed for about two years by the Kennedy Public School system, doing secretarial work; that she was off work at the time of the accident but would have returned to work about the middle of August. She was earning approximately $1,100 per year working during the nine month school year and prior to working for the school had earned from $1,100 to $1,300 per year. Her working hours at the school were from 8:30 in the morning until 4:30 in the afternoon. She paid the bills for the family, did the bookkeeping and put her check in the bank along with the rest of the money. After her work at the school she took care of the home and her family. She prepared the meals and then on weekends did house cleaning, washing and other necessary chores. She went to Sunday School with her children, attended football and basketball games and other athletic events and in other ways was a companion to her husband and children.

As previously indicated, the life expectancy of Charlie I. Braun was 31.17 years. If Mrs. Braun had lived and continued to earn as much as $1,100 per year during this period, the total amount would have been $34,287.00. If she again earned as much as $1,300 a year the total would, of course, be more. The earning capacity of the deceased, however, is not the sole basis for damages in such cases. Charlie I. Braun was also entitled to recover the proved value of the personal services of the deceased. In the case of Dallas Ry. & Terminal Co. v. Bishop, Tex.Civ.App., 203 S.W.2d 651 (RNRE), it was held that $20,000 damages to a 64 year old husband for the loss of his 62 year old wife's services as housekeeper because of her death was not excessive in view of her life expectancy of ten years or more. In that case it was held in effect that approximately $2,000 per year was not excessive for the loss of the services of the housewife. From the above it appears that damages found to have been sustained by Charlie I. Braun

by reason of the death of his wife is not wholly lacking in support of evidence. It is not completely out of line with awards upheld in other cases. Although large, we cannot say that it is so clearly excessive as to indicate passion or prejudice. We do not feel that it can be said that the jury or the trial court was guilty of an abuse of discretion in finding and entering judgment for Charlie I. Braun in the sum of $65,000. Also see Rowan & Hope v. Valadez, Tex.Civ.App., 258 S.W.2d 395 (RNRE).

We are likewise of the opinion that the verdict and the judgment awarding Charlie I. Braun $10,000 for the death of his 18 year old son, Charles Richard Braun, was not so excessive as to show an abuse of discretion. The evidence showed that Charles Richard Braun was an honor student making the fourth highest grade in his high school class. His graduation from high school was just a few weeks prior to his death and he had received a scholastic scholarship to Shriner Institute. The evidence indicated that he had always worked when possible. Shortly before his death he had been employed and paid at a rate of $25 per week. There was evidence to the effect that he was capable of earning from 75¢ to $1 per hour. Under this evidence it is our opinion that the $10,000 damages awarded by the jury is not excessive. Texas & New Orleans R. Co. v. Hanson, Tex.Civ.App., 271 S.W.2d 309 (Writ Dis.).

The judgment based upon the jury verdict awarded Charlotte Braun $25,000 as the amount of the pecuniary value of the loss sustained by her as a result of the death of her mother. Under the court's definition the term "pecuniary value of the loss" included contributions as well as loss of nurture, care, education and advice which Charlotte Braun would in all reasonable possibility receive during her minority from her mother had her mother lived. The evidence indicated that Charlotte Braun was seventeen years of age on

July 10, 1956, the date of her mother's death. She had graduated from high school in the latter part of May, 1956. She was living in San Antonio at the time where she was employed by the Southwestern Bell Telephone Company since June 10, 1956. She saw her mother and brother on the morning of the fatal accident. She worked for the telephone company for six months and then returned home. In January, 1957, she enrolled in college. Based upon Mrs. Braun's established earning capacity of approximately $1,100 per year she would have earned $4,400 during the remaining four years of Charlotte Braun's minority. The $25,000 awarded to Charlotte Braun exceeds the expected earnings of Mrs. Braun during the four remaining years of Charlotte Braun's minority by the sum of $20,600.

■ James Allen Braun was fifteen years of age and was living at home with his parents at the time of his mother's death. The jury also awarded him $25,000 and judgment was entered accordingly. Based upon Mrs. Braun's established earning capacity she would have earned $6,600 during the remaining years of James Allen Braun's minority. The $25,000 awarded to him exceeds the total expected earnings of his mother during the remaining years of his minority by $18,400.

It is urged by appellees that the verdict and judgment in favor of Charlotte Braun and James Allen Braun is supported by the evidence because of their loss not only of the opportunity to participate in the earnings of their mother but also because of their loss of the help, guidance, admonition, control and love and affection of their Christian mother. It is an accepted principle of law as stated in Texas & N. O. R. Co. v. Landrum, Tex.Civ.App., 264 S.W.2d 530, 539 (RNRE), that:

"Neither the pecuniary benefits the children might have reasonably expected to receive from their mother, nor the value to them of her nurture, care, education and guidance can be measured in dollars and cents with either mathematical or legal certainty. For this reason the assessment of damages in this kind of case is a matter peculiarly within the province of the tryers of the facts, and unless a jury's award of damages should be so clearly excessive as to amount to an abuse of discretion, we feel that it should not be disturbed."

In the above cited case awards of $16,000 to a thirteen year old daughter and $16,000 to a twelve year old son for the death of their mother who was regularly employed for about $300 per month and who spent a large amount of her earnings on her daughter and son were held not excessive. We cannot agree with appellees' contention that the Landrum case supports the verdict and judgment in the instant case. In the Landrum case the mother earned about $300 per month. In this case the mother earned about $100 a month. In the Landrum case the children were 12 and 13 years of age, having 8 and 9 years of remaining minority. In this case the children were 15 and 17 years of age, or an average of about three and one-half years older than the Landrum children, and consequently that many less years of minority. The Landrum children were awarded $16,000 each, or a total of $32,000 for the loss of their mother during the eight or nine remaining years of their minority. Their mother's earnings during the nine year period before the youngest child became of age could reasonably be expected to be a total of $32,400. The Braun children were awarded $25,000.00 each, or a total of $50,000.00, for the loss of their mother during the remaining four to six years of their minority. Their mother's earnings during the six year period, before the youngest of them reached majority could reasonably be expected to be a total of not more than $7,200. The reasonably expected earnings of the mother of the Landrum children amounted to more than the judgment, without regard to the portion awarded to them by reason of the

loss of nurture, care, education and advice which they could have expected from their mother. Based upon the total earnings of the mother of the Braun children during their minority the portion of the award to them on account of the loss of nurture, care, education and advice which they could have expected to have received from their mother during the remaining four to six weeks of their minority would have to be a total of about $42,800.

After careful consideration of the evidence we have concluded that the award of $25,000 to each of the minor appellees is excessive. A daughter's loss of the nurture, care and advice of her mother is usually greater than the loss of a son. We are convinced that the verdict in this respect substantially exceeds any rational appraisal of the damages to Charlotte Braun in the sum of $12,500 and exceeds such an appraisal of the damages to James Allen Braun in the sum of $12,500. If each of these appellees will promptly file a remittitur, the judgment will be reformed accordingly, otherwise, the cause as to them will be remanded for a new trial.

■ In numerous points appellant complains of the action of the court in overruling its exceptions to appellees' pleadings concerning gross negligence and exemplary damages, of evidence admitted over its objection bearing upon the question of gross negligence and of special issues submitted to the jury on the question. The judgment awarded no exemplary damages. The error, if any, concerning the matters complained of is therefore harmless unless shown to be of such a nature as to adversely affect appellant's rights or prejudice the jury in its consideration of other issues in the case which are the basis of the judgment. Appellant urges that the matters complained of were prejudicial and harmful and culminated in passion and prejudice on the part of the jury in its verdict as shown by the large award of damages. The amount of the verdict, even though large, does not without other proof show bias or prejudice on the part of the jury. World

Oil Co. v. Hicks, 129 Tex. 297, 103 S.W.2d 962.

We cannot agree with appellant's contention that the court erred in overruling exceptions to appellees' pleadings concerning gross negligence and exemplary damages. Appellees alleged numerous acts of negligence on the part of appellant's truck driver, Woodward, and alleged gross negligence in that he was operating the truck at a speed in excess of 45 miles per hour, at a speed which was excessive under the circumstances, that he failed to keep a proper lookout, failed to keep the truck under proper control and that he drove the truck on the wrong side of the road. Such action on the part of Woodward was alleged to constitute negligence and gross negligence. In the case of Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194, 200, it is held that a combination of acts of ordinary negligence may, under certain circumstances, amount to gross negligence. Judge Griffin, speaking for the majority of our Supreme Court, stated:

"This is not a case of excessive speed alone having caused the accident, and thus being a case of ordinary negligence, but from all the facts and circumstances of this case, as shown by the evidence, we think the jury had a right to find the defendant, Lochausen, guilty of gross negligence."

Appellees' pleadings concerning negligence and gross negligence on the part of appellant alleged that Don Woodward was, at the time of and prior to the collision, an incompetent, reckless, careless driver of motor vehicles; that in particular Woodward was, because of recklessness and carelessness, incompetent to operate the 45 foot long and dangerously heavy transport truck belonging to appellant; that Woodward had been involved in numerous accidents and on numerous occasions had violated traffic laws of the State of Texas, thereby demonstrating his incompetency; that he had a general reputation as an incompetent, reckless and careless driver; that his incompetency, recklessness and carelessness and general

reputation in this regard were known to appellant, or by the exercise of reasonable diligence could have been known to appellant; that appellant was guilty of negligence and gross negligence in entrusting its truck transport into the care of Don Woodward for operation on the highways of the State of Texas and that such gross negligence was a proximate cause of the fatal collision and resulting damages. Appellant excepted to the above pleading on the ground that the allegations were conclusions and that appellees should be required to allege specific facts sufficient to show gross negligence and to apprise appellant of the kind of proof relied upon to show gross negligence. Appellees thereafter filed a trial amendment. In this supplemental pleading they alleged gross negligence on the part of appellant in permitting Woodward to drive its truck. They alleged Woodward was an incompetent, reckless and careless driver and in connection therewith alleged that he was guilty of three prior violations of the traffic laws, one for speeding on January 13, 1956, another for the offense of negligent collision on May 10, 1956, and another for the offense of aggravated assault with a motor vehicle on December 15, 1945. The last of these offenses was alleged to have resulted in a fine of $25.00 and a six month suspension of Woodward's drivers license. Appellant urged in the trial court, as it does here, that the pleadings and the evidence introduced in support thereof did not raise the issue of gross negligence.

It is stated in 13 Tex.Jur. 379, 383, as follows:

"The plaintiff, in order that a recovery of exemplary damages may be sustained, is required to show, not merely that the defendant could have or ought to have foreseen and prevented the loss or injury of which the plaintiff complains, but that he acted intentionally or wilfully, or with a degree of 'gross negligence' which approximates a fixed purpose to bring about the injury of which the plaintiff complains. The

mental factor is also described in the reports by the terms 'malice,' 'fraud,' 'oppression,' 'recklessness,' and the like. Regardless of the expression used to describe it, the purpose or intention of the defendant is determinative of his liability for exemplary damages. Unless there is evidence tending to show that he acted with the necessary degree of knowledge that the injury would result, a verdict for exemplary damages cannot be sustained. The degree in which the defendant foresaw or anticipated the injury to the plaintiff may, doubtless, vary somewhat in different cases, ranging, as appears from the several descriptive terms, between premeditated purpose to bring about the injury and the state of mind which is described by 'recklessness' or 'gross negligence'."

In Missouri Pacific Ry. Co. v. Shuford, 72 Tex. 165, 10 S.W. 408, 411, gross negligence was defined as follows:

"Gross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it."

In the case of Rowan v. Allen, 134 Tex. 215, 134 S.W.2d 1022, it was held that heedlessness or reckless disregard of the rights of others conveys the same meaning as the term "gross negligence". See also Hamilton v. Perry, Tex.Civ.App., 109 S.W.2d 1142. In the case of Morton Salt Company v. Wells, 123 Tex. 151, 70 S.W.2d 409, it was held that an employer who had the duty to exercise ordinary care to provide its employees with reasonably safe appliances with which to perform their duties was guilty of gross negligence in that the evidence showed that for years the company had provided for the use of its employees a dangerous machine with which to work.

■ Under the allegations in the instant case, appellant placed a reckless, careless and incompetent driver, who had a general reputation as such, in charge of its large and potentially dangerous truck for operation on public highways. It was alleged that appellant had knowledge of Woodward's recklessness, carelessness and incompetency, or by the exercise of reasonable diligence could have known thereof. It was also alleged that Woodward was guilty of numerous acts of ordinary negligence which constituted gross negligence. If these allegations had been supported by evidence, appellant would have been liable for exemplary damages. Fort Worth Elevators Co. v. Russell, 123 Tex. 128, 70 S.W.2d 397. In the cited case it is held that the Texas rule concerning the liability of an employer for exemplary damages was substantially as stated in Volume 10, Fletcher's Cyclopedia of Corporations, (Revised Edition) as follows:

"Other courts hold that to make the master liable in any case to exemplary damages for the fraud, malice, gross negligence, or oppression of the servant, it should be alleged and proven that the acts of the servant which constitute the fraud, malice, gross negligence, or oppression were committed by the direction or authority of the master, or that the master has ratified and adopted such acts as his own, or that he has participated in them, or that the master has been guilty of negligence in the selection and employment of the servant whose acts constitute the fraud, malice, gross negligence, or oppression complained of."

In the case of Hays v. Houston, G. N. R. Co., 46 Tex. 272, it was held that carelessness in the selection of employees by a corporation made it liable for exemplary damages. Also in the case of Chronister Lumber Co. v. Williams, 116 Tex. 207, 288 S.W. 402, it was held that a master or principal was liable for exemplary damages because of the act of an agent if the agent was unfit and the principal was reckless in employing him. Also see King v. McGuff, 149 Tex. 432, 234 S.W.2d 403; Howard v. Bennett, 141 Tex. 101, 170 S.W.2d 709, 712; 15 Am.Jur. 729. In 25 C.J.S. Damages § 125, p. 735, in considering the liability of the master for exemplary damages because of an act of his agent, it is stated:

"Further, a master is liable for the acts of his servant done in the scope of his employment where he has employed or retained a servant of known incompetence, recklessness, or bad character."

In our opinion appellees' pleadings were sufficient to present the issue of gross negligence and the trial court did not err in overruling appellant's objections and exceptions thereto.

■■ We also hold that the court did not err in overruling appellant's objections and exceptions to appellees' pleadings and proof of three prior traffic violations by Woodward. They were material on the issue of gross negligence. Two of these violations, shown by the pleadings and proof to have occurred in January and May of 1956, were not objected to when introduced in evidence. Woodward's third plea of guilty and conviction for the offense of aggravated assault with a motor vehicle on December 15, 1945, was objected to by appellant when introduced in evidence on the ground that it was foreign to any issue in the case and that it was too remote. The introduction of these prior offenses on the part of Woodward were not for the purpose of impeaching his credibility as a witness. They were introduced and were admissible in connection with the issue of gross negligence on the part of appellant, upon the theory that Woodward was a reckless, careless and incompetent driver and that appellant knew, or should have known, thereof. McIntire v. Sellers, Tex.Civ.App., 311 S.W.2d 886. The question of remoteness, even in cases where a prior conviction is introduced for impeachment purposes, is to a great extent within the discretion of the trial court In our opinion the

action of the court in overruling appellant's objections to the introduction of evidence concerning the prior traffic violations by Woodward does not present reversible error.

Special issues numbers 12, 13, 14 and 15 of the charge inquired of the jury whether Don Woodward was incompetent to drive the transport truck which he was operating on July 10, 1956, whether appellant's superintendent, Bert Pope, knew that Woodward was incompetent to operate the truck, whether appellant was grossly negligent in entrusting the truck to Woodward for operation, and whether Charlie I. Braun was entitled to exemplary damages from appellant. The jury made affirmative answers to all of these questions and in answer to special issue number 31 found that Charlie I. Braun should be awarded as exemplary damages the sum of $75,000. It was also found by the jury that Woodward suffered no damages as a result of injuries sustained in the collision.

Appellant strongly urges that the above facts and circumstances in the trial of the case considered together with the admission of inadmissible evidence and improper pleadings bearing upon the issue of gross negligence, the large awards for actual damages and the attempted award of $75,000.00 exemplary damages conclusively show passion and prejudice on the part of the jury constituting reversible error. Appellant's points bearing upon this phase of the case are overruled. These points are based upon appellant's contention that the court erred in overruling its objections and exceptions to the pleadings and evidence. Appellees' pleadings were not subject to appellant's objections and exceptions, but on the contrary were sufficient to raise the question of exemplary damages and gross negligence. The evidence concerning Woodward's prior convictions for traffic violations was admissible and not subject to appellant's objections. The error in the submission to the jury of special issues 12 through 15 bearing upon the question of gross negligence

over appellant's objections that there was no support in the evidence is harmless. No part of the judgment is based upon the answers to said issues. We are unable to say that there was an abuse of discretion in the damages awarded except in the awards to the minor appellees, Charlotte Braun and James Allen Braun. Under these circumstances the fact that the jury awarded each of the minor appellees $25,000, which was excessive by $12,500 and by its answer to special issue number 31 attempted to award to Charlie I. Braun $75,000 as exemplary damages, which likewise is not included in the judgment does not require that the judgment as a whole be reversed.

We have carefully considered the record and all points presented and find no reversible error except as noted herein. The judgment is therefore affirmed except the portions thereof awarding the minor appellees $25,000 each as damages for the loss of their mother. The $25,000 award to Charlotte Braun is excessive in the sum of $12,500. The $25,000 award to James Allen Braun is excessive in the sum of $12,500. If each of these appellees will promptly file a remittitur, the judgment will be reformed accordingly; otherwise, the cause as to them will be remanded for a new trial.

### On Motion for Rehearing

We have carefully considered appellant's motion for rehearing and find that it should be, and it hereby is, in all things overruled, except as hereinafter stated. Appellant urges in its motion for rehearing, as it did in its original brief, that $65,000 damages awarded to Charlie I. Braun for the death of his wife was excessive and that we erred in not so holding. After a re-examination of the record and authorities, we have reached the conclusion that appellant's contention in this respect is well taken and that the $65,000 award to Charlie I. Braun exceeds a rational appraisal of his damages for the death of his wife by $20,000. Al-

though precedents are helpful in determining the excessiveness or inadequacy of a verdict, there is no set formula by which the exact amount of damages can be ascertained. As noted in our original opinion, in the case of Dallas Ry. & Terminal Co. v. Bishop, Tex.Civ.App., 203 S.W.2d 651 (RNRE), it was held, in effect, that an award which amounted to approximately $2,000 per year was not excessive for the loss of the services of a 62 year old housewife by a 64 year old husband. At least one difference in that case and this one is that in the instant case the wife had employment outside the home and, consequently, a substantial portion of her time was not directed to services in the home. There was of necessity a considerable reduction in the value of her domestic services. The evidence indicates that the total amount of Mrs. Braun's expected earnings for employment outside the home over a period of 31 years would be in the neighborhood of $34,287.00. We take judicial notice of the fact that the present value of that amount of money paid over a period of 31 years would be much less than $34,000. We have concluded that the $65,000 award to Charlie I. Braun is excessive and exceeds a rational appraisal of the damages he is entitled to receive for the death of his wife in the sum of $20,000. If appellee Charlie I. Braun will promptly file a remittitur, the judgment will be reformed accordingly; otherwise, the cause as to him will be remanded for a new trial.

#### Supplemental Opinion On Filing of Remittitur

On August 1, 1958, this court by its opinion suggested that if the appellees Charlotte Braun and James Allen Braun would each promptly file a remittitur of $12,500, the judgment as to each of said appellees would be reformed accordingly, and, as reformed, affirmed. On August 8, 1958, Charlie I. Braun, as next friend of Charlotte Braun and James Allen Braun, filed the suggested remittiturs. On October 24, 1958, this court on motion for rehearing suggested that if Charlie I. Braun would promptly file a re-

mittitur of $20,000, the judgment would be, as to him, reformed and affirmed. On October 30, 1958, Charlie I. Braun filed the suggested remittitur of $20,000.

Accordingly the judgment of the trial court is reformed in conformity with said remittiturs and, as so reformed, is affirmed.

One-third of the costs of this appeal will be taxed against appellees herein and two-thirds taxed against appellant.

Motions for rehearing may be filed by any of the parties hereto within fifteen days after this date.